## JOHN ENGLISH v. THE STATE.

### *No. 658.    Decided March 6.*

1. **Murder—Special Venire—Order for—Entry of Nunc pro Tunc.**—On a trial for murder, where it appeared that the order for a special venire, though entered upon the court docket, had not been entered upon the minutes, *Held*, that after the return of the writ, it was not error to make the minutes of the court conform to the order.

2. **Same—Evidence of Previous Crimes by and Conduct of Defendant Admissible, When.**—On a trial for the murder of an officer who was endeavoring to arrest the defendant, *Held*, that evidence was admissible to show that defendant and his companion were engaged in the business of horse-stealing; that they did not propose to be arrested, and that they would resort to deadly weapons to prevent even a legal arrest.

3. **Same—Illegal Arrest—Charge—Harmless Error.**—On a trial for murder, where the evidence shows, that deceased was an officer who was killed while attempting to arrest defendant, who was in possession of stolen horses, *Held*, error for the

court to charge upon the hypothesis of illegal arrest, or attempt at arrest; but such a charge being favorable to defendant, he has no ground of complaint.

4. **Same—Arrest—Force by Officer.**—An officer in making an arrest has no right to do so in a violent and wanton manner by resorting to deadly weapons in the first instance, unless this is made necessary by the acts and conduct of the party he is attempting to arrest.

5. **Evidence—Corroboration of Witness by Proof of His Previous Statements.**—Where an attack has been made upon a witness by attempting to show that his testimony was recently fabricated, *Held*, competent and admissible to show, in corroboration of his testimony, that on the night of the homicide he made similar statements as to the facts.

6. **Murder of the Second Degree—Specific Intent.**—The specific intent to kill the party slain is not essential to the crime of murder of the second degree.

7. **Murder—Joint Liability of Confederates.**—Where two parties are acting together in crime, and in a common purpose to resist to the death all attempts to arrest them, in making such resistance it is immaterial which of them fired the fatal shot that killed the officer attempting the arrest.

APPEAL from the District Court of Young. Tried below before Hon. GEORGE E. MILLER.

This appeal is from a conviction of murder of the second degree, with punishment assessed at imprisonment in the penitentiary for a term of thirty-five years.

The party killed was one J. T. Horton, and the killing took place near the public square, in the town of Graham, on March 20, 1894, about 7 o'clock p. m. The circumstances immediately attendant upon the killing are stated in the opinion of the court, in connection with the testimony of H. C. Williams, sheriff of Young County, Texas, which is quoted, and it is unnecessary to give any further detailed account of the killing.

The evidence admitted by the court, over objection by defendant, with regard to the theft of horses by defendant and Willingham prior to the homicide, is concisely stated, as follows, in brief of counsel for appellant:

"1. The testimony of the witness W. S. Swan, with reference to seeing the defendant and Willingham with a herd of horses, in Jones County, on the 9th and 10th days of February, 1894, and the testimony relative to the capture and disposition of said horses.

"2. The testimony of the witness Charles Porter, with reference to the loss of eighteen or twenty head of horses by the Continental Land and Cattle Company, in February, 1894, and their subsequent recovery from the sheriff of Jones County.

"3. The testimony of the witnesses M. L. Hays and Mrs. M. L. Hays, that a few days after the shooting on the Clear Fork, in Jones County, defendant staid at their house one night, and left, going east on foot, toward Baird.

"4. The testimony of the witness Ben Mason, that defendant and another man passed his house on the 12th or 13th of February, 1894,

going east on foot, and that witness heard that Cummings and Dudney had lost their horses on the 13th or 14th of February.

"5. The testimony of the witness C. Cummings, that he lost a black horse on the 13th of February, and that it was stolen from him at Baird, Texas, and was returned to him on the 5th of April by R. C. Dudney.

"6. The testimony of the witness Ellis Richardson, that he had stolen from him on the 12th or 13th of February, 1894, near Baird, Texas, a bridle, saddle, blanket, and pistol, worth $25, all of which were returned to him by R. C. Dudney.

"7. The testimony of the witnesses Frank Sanders and J. E. Floyd, that they saw defendant and another man, in Greer County, between January 12 and March 1, 1894, said witnesses describing the horses ridden by defendant and his companion."

The objection to this testimony was, that it was irrelevant, immaterial, and was in regard to transactions which happened before the homicide and tended to show the commission of other offenses not connected with the one on trial, and which did not throw any light upon the issues on trial. The testimony admitted over defendant's objections, relating to matters transpiring after the homicide, were: (1) The testimony of the witness H. C. Williams (the sheriff), that the horses which he captured from the defendant and Willingham, on the night of the homicide, were delivered by him to R. C. Dudney, of Baird, Callahan County, he, Dudney, having claimed them. (2) The testimony of Charles Auburg, that the day after the homicide witness was in his field, in Jack County, Texas. He saw defendant, and started towards him; that defendant drew his pistol and waved it over his head; that witness then went to his house, and after getting his pistol, returned and found defendant lying upon the ground, with his revolver in his hand; that defendant rose up, and witness told him that he wanted to arrest him. Defendant asked him, "Upon what charge?" Witness replied, "For carrying a pistol." That both witness and defendant then began firing at each other; and continued as long as witness had any ammunition, when witness retired, and defendant went into the brush. That witness was a constable of Jack County.

The facts with regard to the confessions of defendant, the proof of which was also objected to, are contained in the testimony of the witnesses N. A. Wallace and the sheriff, H. C. Williams, as follows:

N. A. Wallace testified: "I took part in the search for defendant, John English, after J. T. Horton was killed. W. O. Clark and myself went to Stephenville after him. He was in the house of Mrs. Willingham, John Willingham's mother. The sheriff and city marshal of Stephenville and a large posse of men were with us. We surrounded the house and watched it all night, and defendant would not give up until next morning. Early next morning we saw him looking out of the windows, with a pistol in his hand, and after looking at the

crowd, he came óut and gave up.   He handed his pistol to the sheriff
or city marshal, one; I forget which.   He was turned over to W. O.
Clark and myself, and we brought him on to Palo Pinto, where we met
Sheriff Williams of Young County.   The next day we started on with
him to Graham.   John Bosworth and myself rode in the buggy with
him.   He and John Bosworth got to talking about the killing, and I
said to the defendant, 'You understand, John, that anything you say
about your case while under arrest may be used in evidence against
you?'   He answered, 'yes'; that his father was a sheriff in Tennessee,
and he had worked in the sheriff's office long enough to understand
that.   He then went on telling about the case.   We asked him why he
killed Horton; and he said, first, that Horton shot at him.   Then we
told him that Horton's pistol had not been fired; and he said he had
it out, and could have fired if he wanted to.   He said they thought
Williams and Horton were going to arrest them, for they were riding
stolen horses.   He showed us a wound on the side of his head, and
said Williams hit him there with one shot."

Cross-examined, witness said: "John Bosworth was in the buggy
with us when I warned defendant, and I winked at John to call his
attention to it, so he would remember it.   Defendant was not drunk at
the time.   On the day before, he got 'full.'   When he left Stephen-
ville a man gave us a quart bottle of whisky, and he took several
drinks of it, and when we stopped for dinner at Gordon, he got hot
in the room, and got sick and vomited.   He appeared to be pretty full
then.   I think we had some whisky on the road from Palo Pinto to
Graham, but do not remember defendant's taking any before the time
he was warned.   I know he did not get drunk that day.   He had told
us about the case before, and had been talking a good deal about it on
the road.   I had understood that he was warned at Stephenville, but
did not hear it and do not know."

Redirect:   "Henry Williams got in the buggy with defendant after
he was warned by me, and rode with him a part of the way to
Graham."

Testimony of witness H. C. Williams with reference to admissions
made to him by defendant while under arrest, said admissions being
as follows: "That witness is sheriff of Young County, Texas, and
helped to bring defendant from Palo Pinto to Graham; that defend-
ant talked about his case; that witness did not know whether
he had been warned or not; that witness got in the buggy with
defendant nine miles this side of Palo Pinto; that soon after witness
got in the buggy defendant began to talk.   Defendant had drank some
whisky.   Witness asked defendant about the scar on his head, and he
said that witness had made it at the second shot.   I asked him why he
did not stop and talk to us.   Defendant said he thought we were try-
ing to arrest them, and he did not want to be arrested."

The witness H. C. Williams (sheriff), in his testimony, had stated,
that defendant John English, the smaller man, was the party who

shot deceased, Horton. That "after the shooting the smaller man ran off to the southeast, down by Garrett's house, and the other ran off to the southwest, in the direction of John Casburn's barn."

The defendant proved by his witnesses, McGee, Carmichael, Kidney, Short, and Parker, each, that shortly after the killing, and at the scene of the killing, they heard the witness, H. C. Williams, say that it was the larger man who killed Horton, and that after the killing this man had gone southeast.

To meet this impeaching testimony, the State was permitted to prove, over the objections of defendant, by the witnesses Kay and Giraud, that a few minutes after the killing they heard Williams, the sheriff, say, that the small man went southeast from the place of the killing. The objection to this testimony was, that "the rule" had been invoked, and that these witnesses were attorneys, who had remained in the court room, had heard the testimony, and were not attorneys engaged in the trial.

An objection was also made to the testimony of Preston Brooks, to the effect, that shortly after the killing, witness Williams had stated to witness at Wallace's saloon, that the little man killed Horton, and ran off southeast. The objection was, that the testimony was hearsay, not res gestæ, not made at the time and place of the homicide, and not the same conversation testified to by witnesses Carmichael, Kidney, Short, and Parker.

It is not deemed necessary to notice specifically the supposed errors in the charge of the court, inasmuch as they are not discussed in the opinion, except as to the specific intent with regard to murder of the second degree; and in this respect, the charge is held not to be erroneous.

*R. F. Arnold* and *Johnson & Aikin,* for appellant.—1. The court had the right to correct the order for a special venire nunc pro tunc at any time before the writ was issued and returned; but the writ itself having been issued on a void order, the subsequent correction of such order by the court could not give validity to a writ previously issued and served. Freem. on Judg., 3 ed., secs. 66, 68, p. 55.

2. The court erred in admitting the confessions of defendant to Marion Wallace, on the road from Palo Pinto to Graham. A confession made by a defendant, while in custody of an officer, in order to be admissible in evidence against him, must be voluntarily and freely made, and after he has been legally warned. It must be made by him as an intended confession, with the full knowledge that it may be used against him, and not in answer to the inquiries propounded to him by the officer who is thus taking the advantage of his prisoner to secure testimony for his conviction. Code Crim. Proc., arts. 749, 750; Brown v. The State, 26 Texas Crim. App., 308; Riley v. The State, 4 Texas Crim. App., 538.

3. The court erred in admitting the confessions of defendant to H. C. Williams, sheriff.  A warning given a defendant while under arrest is not continuous, and the warning given the defendant by the witness Wallace in the absence of the witness Williams, and prior to the conversation between Williams and defendant, was too remote for a basis for the introduction of the confession detailed by the witness Williams. Baker v. The State, 25 Texas Crim. App., 1; Barnes v. The State, 36 Texas, 356.

4. The court erred in admitting evidence of other crimes committed by defendant prior to the homicide.  Testimony that defendant had been guilty of other crimes prior to the homicide, and with which deceased had no connection and in which he had no interest, was irrelevant and immaterial, and does not furnish a motive for the homicide.  Lacy v. The State, 7 Texas Crim. App., 404.

The difficulty detailed by witness Auburg, being subsequent to the homicide, and having no connection with any of the issues involved, was immaterial and irrelevant.

5. The court erred in the admission of the testimony of Giraud and Kay, two attorneys who had not been under the rule.  When the rule has been invoked, attorneys who are witnesses in the cause, and are not actively engaged in the trial of the same, are not exempt from the rule by virtue of being officers of the court.  Code Crim. Proc., art. 662; Leache v. The State, 22 Texas Crim. App., 279.

6. The court erred in admitting the testimony of Preston Brooks, because his testimony was hearsay, and not res gestæ.

Declarations made by a witness, who has been contradicted by other witnesses as to statements made by him, at the place of killing and a short time thereafter, can not be corroborated by a witness to whom he made statements at a different time and place, and more than an hour after the homicide.

7. The court erred in overruling defendant's motion for a new trial, for the errors herein before set out, and because the verdict rendered by the jury in said cause is contrary to the law and the evidence, in this:  (1) The evidence shows, that the defendant was a stranger in the town of Graham; that he was unacquainted with the sheriff, Williams, or the deceased; that at the time of the homicide he was in the act of getting upon his horse to leave; that he was accosted by said sheriff and deceased, and ordered to stop; that the said parties did not inform defendant of their business, nor that they intended to arrest him, nor that they wished to look at his horses, nor that they wished to know his business in the town of Graham, but ordered defendant to stop, and advanced upon him with their hands upon their pistols.  Such evidence shows that defendant did believe, and that he had reasonable grounds to believe, that his life was in danger, or that some serious bodily harm was likely to be done him; and this evidence is sufficient to reduce the grade of the offense from murder to justifiable homicide.

(2) The evidence shows, that at the time of the homicide defendant and deceased were strangers; that no malice existed nor could have existed in the mind of the defendant against the deceased; that defendant was preparing to take his horse and leave, when he was accosted by witness Williams and the deceased, both of whom were armed at said time, and both of whom were advancing upon defendant, and ordering defendant to hold up; that said evidence reduces the grade of said offense, if not to justifiable homicide, then to manslaughter.

(3) The preponderance of testimony shows, that John Willingham killed the deceased, and there is no evidence showing any conspiracy between the defendant and the said Willingham, or that this defendant knew of the unlawful intent of the said Willingham, or that he aided or encouraged by word or deed the said Willingham to commit said offense.

There being more assailants than one, the defendant had the right to act upon the hostile demonstrations of either of them, and to kill either of them if it reasonably appeared to him that they were acting together to take his life or do him serious bodily injury. McLaughlin v. The State, 10 Texas Crim. App., 340; Jones v. The State, 20 Texas Crim. App., 665; Cartright v. The State, 16 Texas Crim. App., 473.

If it reasonably appeared to defendant, at the time of the homicide, that his life was in danger, or that some serious bodily harm would be done to him, then he had the right to kill his assailant, and such killing would be justifiable. Conner v. The State, 23 Texas Crim. App., 378, Spearman v. The State, 23 Texas Crim. App., 224; Patillo v. The State, 22 Texas Crim. App., 586; Brumley v. The State, 21 Texas Crim. App., 222; Bell v. The State, 20 Texas Crim. App., 445; Jones v. The State, 17 Texas Crim. App., 603; Gilly v. The State, 15 Texas Crim. App., 287; Smith v. The State, 15 Texas Crim. App., 338; Short v. The State, 15 Texas Crim. App., 370; Moore v. The State, 15 Texas Crim. App., 1; King v. The State, 13 Texas Crim. App., 277; Jordan v. The State, 11 Texas Crim. App., 435; Horbach v. The State, 43 Texas, 242.

If it reasonably appeared to the defendant, at the time of the homicide, that the life of his companion John Willingham was in danger, or that some serious bodily harm was likely to be done to him by their assailants, then defendant had the right to kill his assailants in the protection of his companion. Guffee v. The State, 8 Texas Crim. App., 187; Foster v. The State, 8 Texas Crim. App., 248; Dyson v. The State, 14 Texas Crim. App., 454; Johnson v. The State, 5 Texas Crim. App., 43; Sterling v. The State, 15 Texas Crim. App., 249.

If an arrest is illegal and unauthorized, it is a continuous assault of an aggravated nature, and if the officer, in making such illegal arrest, is killed, the perpetrator of the homicide will be guilty of no higher offense than manslaughter, and under certain circumstances will be justified. Alford v. The State, 8 Texas Crim. App., 545; Johnson v. The State, 5 Texas Crim. App., 47; Goodman v. The State, 4 Texas

Crim. App., 349; James v. The State, 44 Texas, 314; Dyson v. The State, 14 Texas Crim. App., 454; Ross v. The State, 10 Texas Crim. App., 455.

After the opinion reported below, affirming the judgment, had been handed down by the court, *Kearby & Muse, Stillwell H. Russell,* and *Harris & Knight* filed a motion for rehearing, supported by an able argument and brief, which, owing to its great length, we are unable to reproduce. This motion was overruled by the court without a written opinion.

*N. G. Turney,* and *Mann Trice,* Assistant Attorney-General, for the State.—1. The first and third assignments of errors assail the action of the court a quo, overruling appellant's motion to quash the venire and reforming the order therefor nunc pro tunc. The grounds of the motion were, that the order for the writ specified neither the number of men to be served nor the number that should constitute the venire; that it did not embrace the requisites of the law; that the writ was neither issued nor returned as required, nor disclosed when it was returnable, and that the order and the writ did not accord with the motion. Article 606, Code of Criminal Procedure, providing that an order for a special venire may be procured by the State upon an oral motion of its attorney, it is not a prerequisite that the motion should contain the substance of either the order or the writ, nor that these should follow the motion. But the motion is for a special venire of 100 men, returnable August 11, and that the trial be set down for August 14, thereafter. And the order follows the motion, designating the number of men to be summoned by reference to the list of them drawn pursuant to article 610, Code of Criminal Procedure, ordered to be attached to the writ. That being certain which can be made certain, this was merely informal, and it was proper, upon objection, to correct this informality by an order nunc pro tunc. In the absence of the return, this court will presume, that if it were insufficient, the sheriff amended it. Washington v. The State, 8 Texas Crim. App., 377; Sterling v. The State, 15 Texas Crim. App., 249. It is not pretended that appellant was not properly served with a copy of the veniremen; and the proceedings having performed their functions without prejudice to appellant, if informal at all, contained the essential elements required by law, and were rightly amended.

There was no error in overruling appellant's motion to require the private prosecutor, P. A. Martin, to divulge his employers.

2. The fourth and fifth assignments question the sufficiency of the warning to defendant and the admission of his confession under it. The warning was, "John, you understand that any statement you might make in the presence of an officer might be used in evidence against you?" And appellant's reply evinces conclusively that he understood it: "My father was sheriff in Tennessee, and I learned

that there." But the confession equally demonstrates defendant's presence at the homicide; and that the horses then ridden by him and Willingham were stolen is subsequently developed, the owners regaining them. Nor does it appear that the confession was not freely and voluntarily made, though in reply to questions. Code Crim. Proc., sec. 2473.

3. All the evidence assailed by the sixth assignment was admissible upon the issue of motive, and the charge having limited it to that purpose, no ground of complaint exists. Penal Code, sec. 1044; Preston v. The State, 8 Texas Crim. App., 30; Kunde v. The State, 22 Texas Crim. App., 65.

4. Bill of exception number 14 does not support the seventh assignment. Neither that bill nor the evidence of H. C. Williams shows that R. C. Dudney, of Baird, claimed the horses. Williams' evidence, that he turned over the horses to Dudney, was admissible to connect appellant with the horses, saddle, bridle, blanket, and pistol stolen from Cummings and Richardson, those owners testifying to the theft and recovery of the property, both to verify appellant's confession and expose motive. Johnson v. The State, 29 Texas Crim. App., 150.

Auburg's description of the defendant's presence and conduct in Jack County the day after the homicide tended to show his proximity to the crime and a skulking flight therefrom, and was properly admitted.

5. Witnesses never under the rule may be permitted to testify, under the sound discretion of the court, after the rule has been invoked; and in the absence of a showing of abuse, such action will not be revised. And the evidence of Giraud, Kay, Williams, and Brooks, complained of in the ninth and tenth assignments, was appropriate under the facts. That evidence was as to contemporary declarations by Williams, whose veracity was attacked, that the small man went southeast from the killing.

HURT, PRESIDING JUDGE.—This is a conviction for murder of the second degree, with punishment assessed at confinement in the penitentiary for thirty-five years. Upon application of the county attorney, a venire was ordered for 100 jurors, to be returnable on the 14th day of August, 1894. This order was made by the court, and entered upon the court's docket, but was not carried into the minutes by the clerk. A venire was issued in conformity with the order. After the return thereon, the minutes were made to conform to the order. In this there was no error.

A great deal of evidence was received, over the objection of appellant, tending to prove that appellant and John Willingham had been in the business of horse stealing; that they had stolen quite a number of horses from different persons; and that they, when they believed they were in danger of being arrested, resorted to their arms. Several

fights were introduced in evidence under circumstances showing evidently that they were determined not to be arrested under any circumstances. Evidence was introduced tending to show, that after the homicide they did not propose to be arrested, and that to prevent this they would resort to deadly weapons to prevent even a legal arrest. Under the circumstances of this case, all this evidence was competent. What was this case? Appellant and Willingham were in possession of stolen horses. Williams, sheriff of Young County, and J. T. Horton, the deceased, at the request of Williams, went to examine some horses, to ascertain whether they were stolen property. Williams says that they, deceased and himself, went over to the south side of the public park (situated in the town of Graham), to look at the horses. "We looked at the horses, but could not make out the brand, as it was not light enough. Horton and myself sat down on the park steps to wait for the men to come back for the horses. The horses were hitched on the south side of the park. We had not been there long when the men came to the southwest corner of the square, and then walked on until they got the horses between us and them. Then they turned northeast towards the horses, and walked rapidly to where the horses were. Horton and I walked up towards them. The smaller man, whom I now identify as John English, stood in front and to the right of the larger man, John Willingham. The larger man was about to get on his horse, and I walked past the defendant, leaving him to my right, and halted the other man. Just as the words came from my mouth a pistol shot was fired just to my right, and I turned and saw Horton falling, and defendant and I went to shooting at each other. We shot three or four times each, and to the best of my knowledge the larger man fired one shot at me, and they both ran off. I fired one shot at the larger man as he ran off."

The evidence demonstrates that deceased did not fire his pistol at all. It is beyond dispute that appellant and Willingham were in possession of stolen horses. The court instructed the jury in regard to a homicide in prevention of an illegal arrest. If the sheriff or any other person had, with or without warrant or capias, arrested the party, they would have performed a duty, and the arrest would have been legal. Article 343, Code of Criminal Procedure, provides: "All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable grounds to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay." In this case, the appellant and his pal were in the possession of stolen horses. There was no mere supposition regarding the fact. The seizure was attempted openly. Here the sheriff, or any other person, without warrant or capias, had the right to seize the property, and arrest the

thief or person in possession of the stolen property. The court should not have instructed the jury upon the hypothesis of an illegal arrest or attempt at arrest. But this charge was against the State and favorable to the appellant. But concede that the sheriff and Horton had the right to arrest appellant and Willingham. They had no right to make the arrest in a violent and wanton manner, resorting to the use of deadly weapons in the first instance, without resorting to milder means, unless the act of appellant or Willingham made this necessary. This rule was submitted to the jury by the charge of the court.

Appellant complains of testimony to the effect that the witness gave on the night of the homicide a similar version of the facts attending same as sworn to by him on the trial. Appellant, before this, had made an attack upon him, by trying to prove that his evidence was recently fabricated. Under this state of case, the State had the right to sustain her witness by proving that just after the homicide her witness made the same statement in substance as that sworn to on the trial, and by this means disprove that his testimony was recently fabricated.

The charge of the court is objected to, because it instructs the jury, that to constitute implied malice there need not be the specific intention to kill the deceased. In murder of the first degree there must be the specific intent to kill the party actually slain. In murder of the second degree this is not required. In conveying this distinction to the jury, the learned judge used the language complained of. When the charge is read as a whole, it will not be found to contain any error on this part. That appellant endeavored to kill the man actually slain is evident, for with a deadly weapon he shot deceased through the heart, and of course killed him.

It is contended that Willingham, and not appellant, killed deceased. This is altogether immaterial, if it were true (which is altogether improbable), because the circumstances in this case show that Willingham and appellant had, before this homicide, determined that they would not be arrested for their thefts; that they would resist all attempts to arrest them to the death.

Does the evidence support the verdict? It does, most abundantly. We have, though not written upon, carefully considered the other errors assigned. None are well taken. Appellant was properly warned that his statement made to the officer might be used against him. This he thoroughly understood without being warned.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.