### E. PHILLIPS v. THE STATE.

No. 2789.   Decided February 18, 1914.

Rehearing denied March 27, 1914.

**1.—Robbery—Former Conviction—Pleading—Appeal Pending.**

Where, upon trial of robbery, the defendant pleaded former conviction and contended that he was convicted of false imprisonment in the County Court

on facts growing out of the same transaction, but it appeared that an appeal was pending thereon, and he made no motion to continue or postpone the case and his said plea was in other respects defective, there was no error in striking it out.

### 2.—Same—Rule Stated—Former Conviction—Pleading.

Under article 572, Code Criminal Procedure, a plea of former conviction must be in writing and sworn to and can not be made under the plea of not guilty, and where the former conviction is pending on a motion for new trial or on an appeal, he must make a motion to continue. Following Lindley v. State, 57 Texas Crim. Rep., 305, and other cases.

### 3.—Same—Former Conviction—Misdemeanor.

Where defendant was being tried for robbery, he could not interpose a plea of former conviction of false imprisonment in this court, as this court is an appellate court and can not try the facts. Following Lee v. State, 66 Texas Crim. Rep., 567, and other cases.

### 4.—Same—Evidence—Materiality of Testimony.

Where, upon trial of robbery, the evidence showed that the party injured was employed as a detective to ferret out violations of the local option law, and that he was inveigled into entering defendant's barber shop where he was cruelly beaten and then robbed by defendant and his campanions, there was no error in admitting testimony that the party injured was so employed and all the facts leading up to the robbery and which transpired immediately thereafter.

### 5.—Same—Evidence—Cross-examination.

Where, upon trial of robbery, the whole manner of cross-examination of the principal State's witness was such as to make it appear that his testimony was a fabrication, there was no error in admitting supporting testimony by various witnesses showing that the testimony of said principal State's witness was in accordance with the facts.

### 6.—Same—Internal Revenue License—Evidence—Motive.

Upon trial of robbery which grew out of the effort of the principal State's witness to detect violations of the local option law, and that defendant was found with whisky in his possession and had inveigled said prosecuting witness into his barber shop and there, together with his companions, cruelly whipped and then robbed him, there was no error in permitting the State to show that the defendant had internal revenue license to sell intoxicating liquors.

### 7.—Same—Evidence—Immateriality of Testimony.

Upon trial of robbery, there was no error in rejecting testimony that the principal State's witness had illicit intercourse with a woman, and other immaterial testimony.

### 8.—Same—Charge of Court—Objections.

Where, upon trial of robbery, the court submitted a full and proper charge applying same to the facts of the case and fully covered the requested charges which were refused, there was no error; besides, the objections were too general. Following Byrd v. State, 69 Texas Crim. Rep., 35.

### 9.—Same—Sufficiency of the Evidence.

Where, upon trial of robbery, the evidence sustained the conviction under a proper charge of the court, there was no error.

Appeal from the District Court of Upshur. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Warren & Briggs,* for appellant.—On question of the sufficiency of the evidence: Shipworth v. State, 8 Texas Crim. App., 135; Morris v. State, 13 id., 65; Winston v. State, 9 id., 143; Tallant v. State, 14 id., 234; Dow v. State, 12 id., 343; Loza v. State, 1 id., 488; Quitzow v. State, 1 id., 65; Kay v. State, 40 Texas, 30; Cain v. State, 49 Texas Crim. Rep., 360, 92 S. W. Rep., 808.

On question of introducing internal revenue license and testimony as to other offenses: Johnson v. State, 65 Texas Crim. Rep., 43, 143 S. W. Rep., 626; Comegys v. State, 62 Texas Crim. Rep., 231, 137 S. W. Rep., 349.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of cross-examination: Hardin v. State, 57 Texas Crim. Rep., 401; Harville v. State, 54 id., 426; Salazar v. State, 55 id., 307; Williams v. State, 24 Texas Crim. App., 637; Romero v. State, 56 Texas Crim. Rep., 435, 120 S. W. Rep., 859; Gusemano v. State, 155 S. W. Rep., 217; Jones v. State, 38 Texas Crim. Rep., 87.

PRENDERGAST, PRESIDING JUDGE.—From a conviction of robbery with the lowest penalty assessed appellant prosecutes this appeal. We will make a statement of what the evidence, in effect, shows and justified the jury to believe.

The local option law prohibiting the sale of intoxicating liquors was in force in Upshur County. Violations of said law were occurring, by different persons, called by some "boot-leggers." The authorities were anxious to ascertain who the guilty parties were and punish them. The city council of Gilmer, the county seat, the city marshal, the sheriff and county attorney, engaged one W. O. Hayles to ferret out such violations, against some of whom proceedings had been begun and others were to be prosecuted before this offense is alleged to have been committed. Hayles had not lived at Gilmer but a short time prior to the alleged offense in this case on April 18, 1912. After his said employment he went to work to ferret out and procure evidence against such parties as were guilty. The evidence was sufficient to justify the jury to believe that appellant and his associates had information and knowledge of the work said Hayles was then engaged in; that appellant and several others,—his associates,—entered into a conspiracy among other things, to severely whip or beat said Hayles and run him out of the town and county so as to prevent him from doing the work he was engaged in. Appellant was the proprietor, or worked, in a barber shop in Gilmer. The building was cut into two rooms by a partition clear across about the center, in the center of which partition was a door from the barber shop to the back room. During the evening of April 18th, Fritz Boyd, one

of appellant's associates made an agreement with Hayles for Hayles to meet him early that night in the town at which time ostensibly he would see if he could get some whisky to drink. Hayles met this party that night about dark or just after, near said barber shop when the party invited him up into the barber shop for the purpose of getting and drinking some whisky. Boyd then invited Hayles into said barber shop to take a drink and led the way, Hayles following. When they went into the shop appellant was about his barber chair, having something in his hands connected with that business. Boyd walked up to him and told him they wanted a drink. He laid down whatever he had and said all right, and they then went from the barber shop through said door in said partition into the back room, appellant leading the way. The three, appellant, Boyd and Hayles then went into this back room in the order named. As soon as they got into this back room appellant reached up on a shelf, got a bottle of whisky and glass—an ordinary whisky glass; he poured out a drink in the glass, handed it to Boyd who drank it; he poured out another drink in the same glass and handed it to Hayles, who drank it. He then replaced the glass and bottle on the shelf. There were two bottles on this shelf. Just as this occurred Hayles at once was attracted to other parties in the front room, appellant's associates. They were then barring or fastening the front door of the barber shop from the inside. Appellant immediately took hold of Hayles' arm and asked him, "What have you got on you?" He replied, "I haven't got much of anything." Appellant said, "You see that rope there?" Hayles said, "Yes, it don't look like anything but a rope to me." Appellant said, "By God, you will think it is something but a rope." Hayles replied, "Well, I might, but that is all it looks like now." Some one of appellant's associates then picked up the rope. Fritz Boyd then took hold of Hayles' other arm, appellant still holding the one he had at first taken hold of. Appellant then said, "You God damn son-of-a-bitch, you, we have trapped you." Appellant then ran his hand into Hayles' right hand pocket and took out therefrom Hayles' knife and at least 50 cents in money which he had therein at the time and put it in his, appellant's pocket, and kept it. Hayles resisted this with all his might and struggled with appellant and Boyd to get loose and fought them trying to get loose. While in this struggle several others rushed into the back room from the barber shop and someone, Hayles could not tell whom, struck him a severe lick in the back of the side of the head which rendered him unconscious. When he regained consciousness he found himself stretched upon the floor face downward each arm stretched out, appellant on and holding down one arm, and another of his associates the other arm; two others, each on one of his legs and another on top of him with his knees about his shoulders, holding a cloth over his nose and mouth; still another beating him on his rump and back with a rope. The beating was quite severe rendering said parts of his body red and black from the bruises of the whipping. After thus inflicting this cruel outrageous beating and whipping of him until they were satisfied there-

with they ceased and helped him up. Appellant and Boyd, on either side, took hold of his arms, raised him up and placed him on his feet. When first beating him it seemed they did so with his clothes on, but towards the last appellant said, "Take the God damned son-of-a-bitch's breeches down," which they did and then beat him some more and until appellant said, "That will be enough." One of appellant's associate's, James Reddick, then produced a pistol and presented it in Hayles' face and asked him if he saw it. Hayles replied yes. They then asked him, "Can you leave town?" He said, "Well, I can do it." They said, "Well, you see that. If you are here in the morning, you will get a ball in you. We have got more friends here than they think we have, and you better be gone from here in the morning, if you are not, you will get a ball in you." Said Reddick was doing that talking. Appellant, at the same time, said, "We have got more friends here than you think we have, and you better be gone in the morning." They then took him to the front door of the barber shop, opened it, took him out and then again told him as he was leaving, "You better not be here in the morning, if you do you will get a ball in you and you better be God-damn sure to leave." Hayles said he would be glad to go home and get his clothes; they said, "You can go home and get your clothes, but you better be damned sure you ain't here in the morning; if you do, you are going to get a ball in you." Hayles then asked them if he could leave and they told him he could. Hayles then at once left and started towards his home; they, or some of the crowd, watched him and still did so until he had gone some distance and got out of sight of the location where the barber shop was. Immediately after leaving and within a short distance and while he was still in sight of these parties, Hayles met the city marshal and said to him, "Follow me," not stopping, but continuing towards his home. The city marshal did not then understand what had occurred, nor why Hayles told him to follow him, but supposed that he wanted him to keep in sight of him because he thought he would go where some parties were and procure whisky. The city marshal watched him for sometime and saw some others, at least said Reddick also watching Hayles, until Hayles got out of their sight. Hayles proceeded at once to his home and as soon as he could get hold of a telephone, called the deputy sheriff and the city marshal. After some little delay they came to where he was and he told them what had been done to him. They together with him, went to the county attorney's room, where he slept and had retired and woke him up and told him what had occurred. At this time he took down his clothes and showed these officers where and how he had been beaten and also at the same time told them of and showed them a large knot on his head, which he said was the size of a guinea egg; one of the other witnesses said the size of a hen egg, and another the size of his fist, but he thought this was a little exaggeration of the size of it. Hayles, at the time, insisted upon these officers going with him and at once arresting appellant and the others, but especially appellant, claiming that he had

been robbed by appellant and that if they would then go with him, arrest and search appellant, his, Hayles', knife and money would be found on appellant's person. By this time it was somewhat late at night and the officers concluded that they would make no arrest until next morning. The next morning Hayles made complaints against appellant and the others and they were arrested. Said Reddick broke jail and was a fugitive from justice and it appears has not yet been apprehended, nor arrested since he broke jail. Appellant and some of his witnesses denied all this, and claimed said barbershop was not open that night; that they were not there, and said whipping, robbery, etc., did not occur.

In June, 1912, the grand jury of said county was convened and organized at the regular term of the court. Upon investigation they indicted several of these parties for various offenses growing out of this transaction. Among others, they indicted appellant for false imprisonment, and in another indictment, for robbery. The indictment charging appellant with false imprisonment of said Hayles was properly transferred from the District to the County Court of said county and he was tried and convicted thereon, from which conviction he at once appealed. Thereafter, on June 17th, this cause was called for trial and tried and from a conviction he prosecuted this appeal.

The main question raised and presented herein is appellant's contention that the former conviction in the County Court case was former jeopardy and that this conviction can not stand on that account. The record on this point clearly shows that when this case was called for trial appellant plead said former conviction of false imprisonment as a bar to this prosecution, alleging that both this and that offense occurred at the same time and as a part of the same transaction; that the grand jury indicted for both and that the misdemeanor case was transferred from the District to the County Court and first tried, resulting in his conviction. His plea alleges that the County Court conviction had never been vacated, discharged or set aside. It does not allege that no appeal was prosecuted therefrom. He says that he attaches a copy of the indictment to his plea, but we find none therewith or elsewhere in the record. He also says therein that he attached a copy of the judgment of said County Court conviction, but it is not attached and is nowhere in the record. The statement of facts on this point shows that appellant offered in evidence the said misdemeanor indictment and states that it charged appellant with false imprisonment on April 18, 1912, by means of an assault and actual violence to said Hayles and by putting him in fear of bodily injury in two counts and that he also offered the judgment in said misdemeanor case. Neither the indictment nor judment are copied in the record, but it is stated in the statement of facts that it was agreed that on said misdemeanor indictment appellant was tried in the County Court of Upshur County at the May term, 1913 thereof and judgment of conviction was entered in said cause, adjudging him guilty of false imprisonment of said Hayles as charged therein. "That thereafter a motion for new trial was filed and overruled and the defendant

perfected his appeal in said cause, by giving notice of appeal and entering into bond as the law requires and that that appeal is now pending in the Court of Criminal Appeals undisposed of."

. After hearing all this evidence the court below in this case told the jury they must not mention or discuss the result of the trial in the County Court wherein defendant was charged with false imprisonment; that the result of said trial was admitted solely upon appellant's plea of former jeopardy and such plea had been withdrawn from the jury, because the court holds that it is without merit.

We have given this subject a careful and thorough investigation. The law on the subject is so well settled and clear, we deem it unnecessary to discuss the question at any length or to cite all of the authorities. We will therefore only discuss, cite some of the authorities, and decide the point.

Our Constitution says. "No person for the same offense shall be twice put in jeopardy of life or liberty." Article 1, sec. 14. Our statute, article 572, Code Crim. Proc., expressly requires that when an accused seeks to take advantage of a former conviction, he must do so by sworn plea in writing. (Art. 573.) It has all the time been held by this court that such defense can not be made under the plea of not guilty and that unless appellant properly pleads it, by sworn plea in writing, he can not get advantage of it. It is also well established that where appellant seeks to avail himself of this defense, where the former conviction is pending on a motion for new trial, or an appeal has been taken and it is pending on appeal, he must make a motion to continue the second case to await the disposition of the motion for new trial, or appeal, as the case may be, and when he does not do so, he can not take advantage under such plea to defeat a trial and conviction. (Dupree v. State, 56 Texas. Crim. Rep., 563; Lindley v. State, 57 Texas Crim. Rep., 305; Dupree v. State, 56 Texas Crim. Rep., 387; Maines v. State, 37 Texas Crim. Rep., 617; Powell v. State, 42 Texas Crim. Rep., 11; Brown v. State, 43 Texas Crim. Rep., 272; Washington v. State, 35 Texas Crim. Rep., 156.) No such motion or suggestion of it, so far as this record shows, was made in the court below. So .that clearly the court below committed no error when he refused to submit to the jury for a finding appellant's plea of former conviction, and correctly held that there was no merit therein. It is also clear that whatever be the result of the appeal in the misdemeanor case, appellant can not interpose in this court such defense  This court is an appellate court solely and not a trial court. Lee v. State, 66 Texas Crim. Rep., 567, 148 S. W., 567; Bosley v. State, 69 Texas Crim. Rep., 100, 153 S. W. Rep., 878; Pye v. State, 71 Texas Crim. Rep., 94, 154 S. W. Rep., 222.

Appellant has a large number of bills of exceptions. Several of them present kindred questions. We will, therefore, not take up each bill separately, but decide the points raised by them.

The court below correctly held that the State could show by said Hayles

what his business and employment was, as stated above in the statement of the evidence. And the court correctly held that Hayles could testify that he was at said barbershop by appointment with Boyd, the testimony, as stated by the court in approving the bill, showing that a conspiracy existed between appellant, Boyd and others to get hold of said Hayles that night to beat and whip him, as they did. The court also correctly permitted Hayles to testify that in passing the city marshal that night he told the city marshal to follow him and also that later during the same night, he told the city marshal, the deputy sheriff and the county attorney of his said mistreatment, and exhibited his person to them at the time; and their testimony to the same effect. The court qualified appellant's bills by showing that Hayles had testified in the County Court in said false imprisonment case, and that he did not testify in that trial of having been robbed, giving his reasons for not so doing. The court further stated and the record demonstrated that "the whole manner of cross-examination (of Hayles) was to make it appear that the witness' testimony was a fabrication," and the supporting testimony by said various witnesses was admitted after and in view of the said cross-examination of Hayles. Jones v. State, 38 Texas Crim. Rep., 87; Gusemano v. State, 69 Texas Crim. Rep., 557, 155 S. W. Rep., 217; Wharton Crim. Law, sec. 492, and cases cited in note 3; English v. State, 34 Texas Crim. Rep., 190, 30 S. W. Rep., 233; Reddick v. State, 35 Texas Crim. Rep., 463, 34 S. W. Rep., 274, 60 Am. St. Rep., 56; Mitchell v. State, 36 Texas Crim. Rep., 278, 33 S. W. Rep., 367, 36 S. W. Rep., 456; Williams v. State, 24 Texas Crim. App., 637, 7 S. W. Rep., 333; Keith v. State, 44 S. W. Rep., 849; Ballow v. State, 42 Texas Crim. Rep., 263, 58 S. W. Rep., 1023.

The court correctly permitted the State to prove by appellant while he was on the stand, that he had United States Internal Revenue license to sell intoxicating liquors in Gilmer for the time from January 1, to July 1, 1912; nor did the court err in refusing to withdraw such testimony from the jury, because appellant in explanation of why he came to get it said, he did so at the instance of the Internal Revenue agent to protect himself from contemplated prosecutions in the Federal Court. Neither did the court err in refusing to permit several of appellant's witnesses to testify in effect that it was generally understood in another place, where said witness Hayles had lived, that he had been criminally intimate with a young woman and had gotten her pregnant and had left for that reason; and that he had induced a certain girl to run away with him and marry him after he had gotten her in that condition, and that he had talked to various persons about having "times" with said girl who afterwards became his wife, and on another occasion, asking parties if they didn't want a "piece" and invited them to see his wife, and such like matters. None of this could be introduced for the purpose of impeaching the witness Hayles. Branch's Crim. Law, sec. 868.

There are some complaints of the court's charge in minor matters and also some special charges requested which were refused. Even if

these matters were raised in such a way that we could consider them (Byrd v. State, 69 Texas Crim. Rep., 35, 151 S. W. Rep., 1068) they present no reversible error. Such of the refused charges as were proper were fully and substantially embraced in the court's charge. The court's charge fairly, fully and correctly presented all the issues to the jury for a finding and all of them were found against appellant. The evidence is amply sufficient to sustain the verdict. The judgment is affirmed.

*Affirmed.*

[Rehearing denied March 27, 1914.—Reporter.]