WILBURN GLEASON v. THE STATE.

No. 3643. Decided June 23, 1915.

**1.—Seduction—Insufficiency of the Evidence.**

Where, upon trial of seduction, the evidence did not show any of those wiles and blandishments so necessary to win the heart of a woman, and cause her to surrender her virtue, but simply showed a plain promise to marry in exchange for sexual favors, the judgment must be reversed and the cause remanded. Following Spenrath v. State, 48 S. W. Rep., 192, and other cases.

**2.—Evidence—Child of Prosecutrix.**

Upon trial of seduction, the child of prosecutrix should not have been produced before the jury.

Appeal from the District Court of Jack. Tried below before the Hon. F. O. McKinsey.

Appeal from a conviction of seduction; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Stark & Stark,* for appellant.—On question of the insufficiency of the evidence: Coleman v. State, 71 Texas Crim. Rep., 20, 158 S. W. Rep., 1137; Simmons v. State, 54 Texas Crim. Rep., 619, 114 S. W. Rep., 841; Muhlhause v. State, 56 Texas Crim. Rep., 288, 119 S. W. Rep., 866; Barnhart v. State, 76 S. W. Rep., 475.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of seduction and he prosecutes this appeal.

Miss Maggie Davis, the prosecuting witness, testified: "My name is Miss Maggie Davis; age twenty-three years now. I was raised near Cundiff; not born there, but came there when I was about two months old, and have lived there ever since. I am acquainted with Wilburn Gleason. On the night of November 28, 1912, he and I were coming back from a literary entertainment. That night we had been to a literary entertainment at the house of Mr. M. L. Gleason, a brother of defendant, at Cundiff, and we were coming back. This was about 11 o'clock. He began to want me to show him a good time. He said he would marry me if I would submit to him. That was the cause of my submitting. I would not have submitted to him if he had not promised that. I had intercourse with him in the buggy. Q. Just state the position he placed you in. A. Just pulled out the edge of the seat, and caused me to lie back. I bore a child after that, and the defendant is the father of that child. I was not married to the defendant at that time; not married to anybody. That was in Jack

County, Texas. After that I told him my condition, and reminded him of his promise. He said that we would make it all right, not to tell the folks. I spoke to him about that frequently—every time I met him. He would just keep putting it off till long towards the last, and said he wouldn't do nothing finally. He said I could go to hell or any other damned place I wanted to.

"The defendant went with me right smart and came to see me lots. He came to see me off and on for about two years. He would take me to parties, places of amusement, church and parties, and visited me lots. Q. State whether or not the defendant, when you told him about your condition, said he had ruined other girls. A. He did. He said that he had had intercourse with other girls; that I was not the only one. He called the name of one girl that he had intercourse with. I don't remember any other statement in that connection. I believe that is about all he said he had intercourse with other girls. At the time of my confinement the defendant was up at their old place, about 150 yards from our house. He left the county immediately after that. I don't know where he went. He was there the day the baby was born, and left immediately after. He returned to Jack County about a week or two before Christmas, 1913."

This is all of her testimony on direct examination, and if true and corroborated in every detail it would not support a conviction. She simply says: "He began to want me to show him a good time. He said he would marry me if I would submit to him. This was the cause of my submitting." This was trading for a promise of marriage, and as she carried out her part of the trade, appellant ought to have carried out his part, but such evidence is what is termed "barter and sale" and does not tend to show any of the elements of legal seduction. Spenrath v. State, 48 S. W. Rep., 192; Corzell v. State, 43 Texas Crim. Rep., 82.

The evidence in this case being wholly insufficient to sustain the conviction, as the young lady's testimony, if true, as a whole does not make a case of seduction, in that it does not show any of those acts, wiles and blandishments so necessary to win the heart of a woman and cause her to surrender her virtue to him, but simply shows a plain promise to marry in exchange for sexual favors, it will be necessary to reverse the case. And as we will reverse, and the State may be able to adduce additional testimony and may desire to further prosecute the case, we will say that the child should not have been permitted to have been brought before the jury, identified and introduced as evidence as was done in this case.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*