## WILBURN GLEASON V. THE STATE.

### No. 3913.    Decided February 2, 1916.

### Rehearing denied March 1, 1916.

**1.—Seduction—Evidence—Cross-Examination—Supporting Testimony.**

While the cross-examination may not have authorized the State to support prosecutrix's testimony by proof of prior statements made before the date of the alleged act of intercourse, yet where appellant introduced her testimony on the former trial to impeach her as to a prior existing promise of marriage, then the State could support her testimony and prove by her mother that some two or three months prior to the alleged act of intercourse prosecutrix had told her that she was engaged to marry the defendant, and by her sister's testimony that she helped the prosecutrix then in making her wedding clothes. Following Williams v. State, 24 Texas Crim. App., 637, and other cases.

**2.—Same—Evidence—Leading Questions.**

Upon trial of seduction, under the circumstances and facts of the case, there was no error in permitting the State to propound questions to the prosecutrix whether or not she loved the defendant and whether she would have submitted if she had not loved him. Following Hinman v. State, 59 Texas Crim. Rep., 29, 127 S. W. Rep., 221, and other cases.

**3.—Same—Evidence—Declarations of Defendant.**

Upon trial of seduction, where the prosecutrix had testified to meeting defendant several times after she became aware that she was pregnant and that he always promised that he would carry out his promise and marry her, it was not improper to permit her to testify that shortly before the birth of the baby defendant was at her home and at that time said that he was not going to marry her but that she could go to hell or any other damn place, and then fled the country.

**4.—Same—Evidence—Conversation.**

Where a State's witness testified to a conversation he had with defendant, there was no objection in permitting the witness to state what he said to defendant, as it was necessary to render intelligible the statements of defendant on that occasion, and to permit the entire conversation to be introduced in evidence, as the same amounted to an admission that he seduced the prosecutrix and felt legally obligated to marry her, all of which corroborated her statements. Following Davis v. State, 3 Texas Crim. App., 91, and other cases.

**5.—Same—Bill of Exceptions.**

Where the bill of exceptions did not disclose what the answer of the witness would have been to the question propounded, it presented nothing for review, as it must always be shown that it is as to some material fact in the past. Following May v. State, 25 Texas Crim. App., 114, and other cases.

**6.—Same—Evidence—Impeaching Witness—Limiting Testimony.**

Where a defendant's witness testified to a material fact which tended to show that prosecutrix was not a virtuous and chaste female, it was proper to permit testimony to be introduced showing that the witness had made contrary statements at the former trial, and it was not necessary to limit this impeaching testimony. Following Brown v. State, 24 Texas Crim. App., 170, and other cases.

**7.—Same—Evidence—Recent Fabrications—Rebuttal.**

Where the defendant made an effort to create the impression that the testimony of the prosecutrix was of recent fabrication, and that the attorneys for the State had suggested to her that it was necessary that she must add to her former testimony, there was no error in permitting State's counsel to ask her in rebuttal whether it was not a fact that the State's attorneys had told her that the case had been reversed and wanted to know of her whether there was anything she had forgotten, as they wanted to know the truth, the whole truth, and nothing but the truth, and in permitting her to answer the question; the fact of the reversal of the case having already been brought out by the defendant.

**8.—Same—Bringing the Child Into Court.**

Where, upon trial of seduction, the prosecutrix came into the court-room with her baby in her arms, and the court immediately had the same removed and it was testified to by other witnesses that she had a baby, there was no error.

**9.—Same—Sufficiency of the Evidence—Charge to Acquit.**

Where, upon trial of seduction, the evidence sustained a conviction, there was no error in refusing to give peremptory instructions to acquit.

**10.—Same—Evidence—Incidental Facts.**

Where, upon trial of seduction, the prosecutrix and her mother were severely cross-examined as to their good standing in the community, there was no error in permitting the mother of the prosecutrix to state incidentally that she was a member of the church.

**11.—Same—Charge of Court—Promise of Marriage.**

Upon trial of seduction, there was no error in the court's refusal of a requested charge to the effect that if the jury found that the prosecutrix yielded to defendant wholly on account of said promise to marry her, to acquit him, as the contrary proposition is the law.

**12.—Same—Corroboration—Charge of Court—Accomplice.**

Where defendant asked for peremptory instructions to acquit on the ground that there was no evidence corroborating the testimony of prosecutrix as to a promise of marriage and the act of sexual intercourse, but the testimony showed the admissions of defendant as to both of these and also by other facts and circumstances, there was no error in refusing appellant's requested charges; the court charging in approved form upon accomplice's testimony. Following Campbell v. State, 57 Texas Crim. Rep., 301, 123 S. W. Rep., 583.

**13.—Same—Requested Charges—Presumption of Innocence—Reasonable Doubt.**

Where, upon trial of seduction, the court gave a full charge applicable to the facts, including the presumption or innocence and reasonable doubt, and a proper charge on accomplice's testimony, there was no reversible error.

**14.—Same—Seduction—Barter and Sale.**

Where the defendant contended that the evidence of prosecutrix did not make a case of seduction, but showed a case of barter and sale, but the record showed the contrary, the conviction was sustained.

**15.—Same—Supporting Testimony—Rule Stated.**

It has always been the rule in this court that if defendant's case is left to a witness who testified under a corrupt motive or that her testimony is of recent fabrication, that the State may sustain the witness by proof of similar statements in harmony with her testimony, made before any motive existed to testify falsely. Following English v. State, 34 Texas Crim. Rep., 190, and other cases.

**16.—Same—Accomplice—Corroborating Herself.**

Such supporting testimony was not permitting a conviction by allowing prosecutrix to corroborate herself, but was admissible in determining whether or not she was speaking the truth, and the jury were specifically so instructed.

**17.—Same—Corroboration—Promise of Marriage.**

Where defendant contended that prosecutrix was not corroborated as to defendant's promise of marriage, yet it appeared from the testimony that no other deduction could be drawn therefrom, there was no reversible error.

**18.—Same—Promise of Marriage—Charge of Court.**

It was not proper, upon trial of seduction, to charge the jury as requested if the prosecutrix relied solely on the promise of marriage to acquit the defendant.

**19.—Same—Sufficiency of the Evidence—Eight Months Child.**

Where, upon trial of seduction, the evidence was sufficient to sustain a conviction, the fact that the child was born eight months after the act of sexual intercourse would not render the testimony wholly insufficient, as such children frequently live.

Appeal from the District Court of Jack. Tried below before the Hon. F. O. McKansey.

Appeal from a conviction for seduction; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Stark & Stark* and *Fitzgerald & Cox,* for appellant.—On question of insufficiency of the evidence: Gleason v. State, 178 S. W. Rep., 506; Spenrath v. State, 48 S. W. Rep., 192; Gorzell v. State, 63 S. W. Rep., 126; Barnard v. State, 76 S. W. Rep., 475; Sledge v. State, 63 S. W. Rep., 317.

On question of supporting testimony: Harvey v. State, 53 S. W. Rep., 102, and cases supra.

On question of barter and sale: Simmons v. State, 55 Texas Crim. Rep., 441, 114 S. W. Rep., 841; Mulhause v. State, 56 Texas Crim. Rep., 288, 119 S. W. Rep., 866.

*C. C. McDonald,* Assistant Attorney General, and *J. D. McComb,* County Attorney, for the State.—On question of sufficiency of the evidence: Slaughter v. State, 174 S. W. Rep., 580; Curry v. State, 72 Texas Crim. Rep., 463, 162 S. W. Rep., 851.

On question of supporting testimony: Pitts v. State, 60 Texas Crim. Rep., 524, 132 S. W. Rep., 801; Smith v. State, 73 Texas Crim. Rep., 521, 165 S. W. Rep., 574; Northcutt v. State, 70 Texas Crim. Rep., 577, 158 S. W. Rep., 1004; Foster v. State, 68 Texas Crim. Rep., 38, 150 S. W. Rep., 936, and cases cited in opinion.

On question of admitting the whole conversation: De Rossett v. State, 74 Texas Crim. Rep., 235, 168 S. W. Rep., 531; Curry v. State, supra.

HARPER, JUDGE.—From a conviction for the offense of seduction with punishment assessed at two years confinement in the penitentiary, appellant prosecutes this appeal. This is the second appeal, the opinion on the former appeal being reported in 77 Texas Crim. Rep., 300, 178 S. W. Rep., 506.

The case on the former appeal was reversed because the evidence was insufficient to support the conviction. The State on this trial developed its case more fully, and the prosecutrix testified to many additional facts. On direct examination this time she testified:

"My name is Maggie Davis. On the 28th of November, 1912, I was twenty years old. I know the defendant. He used to come to see me. I have been knowing him all my life. We have been raised together; played together when we were children. He had been coming to see me about two years before November, 1912. He came as my regular suitor. He went out in public with me, to church and singings and parties, and called on me at my house. He courted me. He proposed marriage to me, at my home, about six months before November, 1912. We became engaged at that time. He had mentioned marriage to me before that; about a month before, and I did not accept him then, but we became engaged about six months before the 28th of November, 1912. The defendant went with me continuously after he became engaged to me.

"I was with defendant on the night of November 28, 1912. We went to a little entertainment that night at his brother's. The defendant came to my house after me. Going over there the defendant tried to get me to show him a good time. He put his arm around me. He took me home that night after the entertainment. Just as soon as we left the party he began to insist on me showing him a good time, and he begged me until we got about a mile of home, and he promised that he would marry me if I would show him a good time. He says, 'You know we intend to marry, and what will this amount to?' And he kept on begging me to show him a good time, that he was a man of his word and knew that he would marry me, and so I submitted to him. We were in the buggy when I submitted to him. I mean, he had sexual intercourse with me. I believed at that time we would become man and wife. I would not have submitted to him if I had not thought that, and if he had not promised it. That operation gave me pain. The defendant and I were sweethearts when we were boy and girl together.

"After that occurrence I next saw the defendant Christmas week.

He came down to our house to use our telephone. I didn't talk to him of my condition. I afterwards told him of my condition, on the 13th of January, at my house. I reminded him of his promise at that time. He said he would see me out, that he would fill his promise.

"I bore a child by the defendant. He is the father of the child I bore.

"After I talked to the defendant, on the occasion last mentioned, I next saw him in about two weeks, I guess; something like that. He was at our house at that time, after water.

"I saw the defendant at Hamilton's. That was in February if I am not mistaken. I told him then about my condition. He said, 'I will see you out.'

"I made preparations to get married to the defendant. I did part of my sewing, and my sister helped me, my sister, Etta Stewart. The defendant never did marry me.

"About a month before the child was born the defendant, Wilburn Gleason, refused to marry me. He was at our house and I reminded him of it and asked him what he was going to do and he said, 'Nothing.' He said he wasn't going to do anything; that I could go to hell or any other damn place I wanted to. Before that he had at all times said he would carry out his promise.

"At the time I had intercourse with the defendant in the buggy I was not married to him nor to anyone. This act of intercourse that I have testified about, with the defendant, took place in Jack County, State of Texas."

By reading this evidence and her evidence on the former trial, quoted in the opinion on the first appeal, it will be seen she testifies to many facts and circumstances which go to make a case of seduction that she did not testify to on the first trial. In the first case, from her testimony, it would appear that the promise of marriage took place at the time of the alleged act of intercourse. On this trial she testifies that they had been engaged some six months prior thereto, and appellant had been coming to see her and courting her for two years next preceding the date of the alleged act of intercourse. Such additional facts furnish grounds for her reliance on his promise, and that she was led away from the path of virtue by the deceitful promises, acts and conduct of appellant. Young people who have associated together from childhood and who while children are "sweethearts," as she testifies in this instance, ordinarily trust each other and place more reliance in promises made than they do in a person whom they have only casually met since becoming grown. If appellant had been "courting" the girl for two years; became engaged to marry her some six months prior to the first act of intercourse, the fact she testified she yielded to him because of the promise of marriage, and but for such relation existing she would not have yielded to him, does not raise the issue of "barter and sale," where other facts are detailed as the prosecutrix details them on this trial. It is only in cases where no previous relations existed that would suggest love and confidence existed, if she yielded solely in consideration of the man telling her he will marry

her if she will yield to him that such an issue can arise. No such state of case is presented on this trial. The evidence on the former trial, not being fully developed, did present such a state of case, but, as before said, the case was more fully developed on this trial, and this led appellant to give the girl a most severe and rigid cross-examination as to what she had sworn to on the former trial; that she had not testified to him courting her for two years prior to the alleged act, and had not testified to the engagement to marry being of six months standing at that time. This cross-examination might not in and of itself have authorized the State to support the girl by proof of prior statements made before the date of the alleged act of intercourse, but where appellant introduced her testimony on the former trial to impeach her as to a prior existing promise of marriage, then the State could support her testimony and prove by the mother that some two or three months prior to the alleged act of intercourse the witness had told her about she and appellant being engaged to be married. Whenever the opposite side seeks to impeach a witness as to any statement material to the case, then the party calling the witness can support the witness by proving that she had made statements consistent with her testimony on the trial, prior to the time any occasion had arisen for her to testify falsely. This rule of law also renders admissible the testimony of Mrs. Etta Stewart, who testified she helped the prosecutrix in making her wedding clothes. This testimony supported the girl that an engagement to marry existed prior to the date of the alleged seduction, and appellant having sought to impeach her on that issue, she could be supported. Williams v. State, 24 Texas Crim. App., 637; Jones v. State, 38 Texas Crim. Rep., 87; Keith v. State, 44 S. W. Rep., 849; English v. State, 34 Texas Crim. Rep., 190; Reddick v. State, 35 Texas Crim. Rep., 463; Mitchell v. State, 36 Texas Crim. Rep., 278.

A number of questions to the prosecuting witness such as, "State whether or not you loved the defendant?" "State whether or not you would have submitted to the defendant that night if you had not loved him?" were objected to by appellant as leading. Under the record in this case it was not improper to permit such questions to be propounded. Hinman v. State, 59 Texas Crim. Rep., 29, 127 S. W. Rep., 221; Fine v. State, 81 S. W. Rep., 723; Snodgrass v. State, 36 Texas Crim. Rep., 207. And after Miss Davis had testified to meeting appellant several times after she became aware she was pregnant and he always promised that he would carry out his promise and marry her, it was not improper to permit her to testify that shortly before the birth of the baby, appellant was at her home, and at that time said he was not going to marry her, and "that she could go to hell or any other damn place," and then fled the country and was gone for some six or eight months.

Walter Hamilton was testifying to a conversation he had with appellant, and appellant objected to the witness stating what he, witness, said to appellant. As it was necessary to render intelligible the statements of appellant on that occasion, the court committed no error in

permitting the entire conversation to be testified to. On that occasion appellant when asked if he "used any preventative or anything to protect the girl, appellant said he didn't—he took it straight." This expression would not be intelligible without the entire connection being stated, but when the whole conversation is related it amounts to a confession of illicit intercourse. Likewise the statement of appellant when he said, "he would not mind marrying her if he could get a divorce—if he would not have to live with her. He said if he had to marry her and live with her he would rather go to the pen." This statement, when read in the light of the entire conversation, amounted to an admission that he felt legally obligated to marry the girl and is corroborative of her statement that an engagement to marry existed between the parties. Davis v. State, 3 Texas Crim. App., 91; Stockman v. State, 24 Texas Crim. App., 387; Gaither v. State, 21 Texas Crim. App., 527.

As in bill No. 9 it is not stated what the answer of Dr. Key would have been to the question propounded, the bill is incomplete, and presents nothing for review. The testimony expected to be elicited must always be shown and that it is as to some material fact in the past. May v. State, 25 Texas Crim. App., 114; Schoenfeldt v. State, 30 Texas Crim. App., 695.

As defendant introduced Tom Allen as a witness on this trial and the said witness testified to a state of facts material to his defense, it was not improper to permit witnesses to testify that they had talked with Allen at the former trial and he had then stated he knew nothing derogatory to Miss Davis, the prosecuting witness. On this trial he testified to a very damaging state of facts, which if believed would have a material tendency to show that she was not a virtuous and chaste female, and it was proper to permit testimony to be introduced showing that he had made contrary statements at the time of the former trial. Nor was it necessary to limit this impeaching testimony, as it had no tendency to show appellant's guilt of the charge. All it would and could be used for by the jury was in passing on what weight they would give Allen's testimony as affecting the reputation of the girl. Brown v. State, 24 Texas Crim. App., 170; Poyner v. State, 40 Texas Crim. Rep., 640; Schwartz v. State, 53 Texas Crim. Rep., 449; Thompson v. State, 55 Texas Crim. Rep., 120.

As hereinbefore stated appellant was severe in his cross-examination of Miss Davis, introduced her testimony on the former trial to impeach her and on his cross-examination asked what the attorneys had said to her since the former trial, etc. Thus it is seen that an effort was made to create the impression that her testimony was of recent fabrication, and the attorneys at least had suggested to her wherein it was necessary that her testimony be added to. Under such circumstances there was no error in permitting State's counsel to ask her in rebuttal of such cross-examination: "Miss Maggie, state whether or not it is a fact that Mr. McComb and I told you the case had been reversed, and we wanted to know if there was anything you had forgotten; that we

wanted to know the truth, the whole truth and nothing but the truth," and in permitting her to answer the question. The defendant in his cross-examination had already brought out the fact that the case had been reversed on appeal. The court in approving the bill says: "Approved with the explanation that the prosecutrix was asked about a number of matters that she was not asked about on the former trial and her doings and relations with the defendant were by questions propounded by State's counsel, much more fully developed than had been done on the former trial. She was severely cross-examined by defendant's counsel on the difference between her present and former testimony and the impression sought to be made that the new facts testified to by her were fabrications suggested to her by State's counsel."

When Miss Davis was called as a witness she came into the courtroom with her baby in her arms. As soon as the court's attention was called to that fact he had the baby carried out of the courtroom. As it does not appear that the jury saw more than she merely had a baby, and that fact was testified to by a number of witnesses, the bill presents no error.

The court did not err in refusing to give peremptory instructions to acquit. The facts on this trial will and do sustain the verdict of the jury.

The fact that Mrs. Davis, the mother of the prosecutrix, was permitted to incidentally state that she was a member of the church, without stating what church, or any fact connected with her membership, is not a matter that could have had any bearing on the issues in the case. The severe assault appellant made on the character of the girl, in an effort to show that she was lacking in chastity and virtue, and, therefore, he would not be guilty, even if he had had intercourse with her, certainly rendered testimony admissible that the girl's reputation for virtue and chastity was good; that she moved in the best circles of society—attended church, attended the singings, dances and parties and associated generally with the young people of the community, and if in connection therewith it was shown her mother was a member of the church, if error, it was not such error as would call for a reversal of the case. The mother, in a measure, was attacked as well as the girl, by the witness Allen.

If the young lady had submitted her person to appellant without relying on a promise of marriage, there could be no case of seduction, therefore the court did not err in refusing the special charge asking him to instruct the jury, "if you find that the prosecutrix, Miss Maggie Davis, submitted to appellant wholly on account of his said promise to marry her, you will acquit him."

This is not the law, but, on the contrary, she must have implicit faith in and rely on the promise of marriage to constitute a case of seduction.

Appellant asked for peremptory instructions on the ground that there was no evidence corroborative of her testimony as to a promise of marriage, and on the ground that there was no testimony corroborative as

to her testimony as to an act of intercourse, and then asked a charge that if she was not corroborated both as to promise of marriage and an act of intercourse they would acquit. As hereinbefore shown, the testimony of Walter Hamilton as to admissions of appellant would corroborate her as to both, a promise of marriage and an act of intercourse, for he told that witness he used no preventative but took it "straight," and said he would not mind marrying her if he did not have to live with her, but rather than live with her he would go to the pen. In addition to this testimony there are other facts and circumstances in evidence tending to corroborate the girl's testimony. The court gave the charge on accomplice testimony approved by this court in the case of Campbell v. State, 57 Texas Crim. Rep., 301, 123 S. W. Rep., 583, and it was not necessary to give the special charges requested on that issue.

As the court fully instructed the jury on the presumption of innocence and reasonable doubt, there was no necessity to give the special charges requested on this matter. The court instructed the jury:

"The term 'seduce' as used in this charge, means to lead a woman away from the path of virtue.

"Now if you believe from the evidence beyond a reasonable doubt that the defendant, Wilburn Gleason, did, in Jack County, Texas, on or about the 28th day of November, 1912, by promise of marriage, seduce the witness Maggie Davis and did have carnal knowledge of her, and that said Maggie Davis was at the time an unmarried female under twenty-five years of age, you will find the defendant guilty as charged in the indictment and assess his punishment at imprisonment in the penitentiary not less than two nor more than ten years.

"Before you can convict the defendant you must believe from the evidence beyond a reasonable doubt (a) that said witness Maggie Davis was at the time in question under twenty-five years of age; (b) that the defendant had carnal knowledge of her on or about the 28th day of November, 1912; (c) that up to the time that the defendant had carnal knowledge of Miss Maggie Davis, if he did have carnal knowledge of her, she was a chaste female, and (d) that the defendant had carnal knowledge of said Maggie Davis by promise of marriage, and if you have a reasonable doubt as to either one of the matters submitted and designated in this paragraph as (a), (b), (c) and (d) you will acquit the defendant, and say by your verdict, 'not guilty.'"

After having thus instructed the jury it was wholly unnecessary to give the special charges requested by defendant. Outside of his plea of not guilty, his whole defense was based on evidence introduced by him that the girl was not a virtuous and chaste girl, and this defense was fully presented in the charge above. In addition to the above paragraphs the court instructed the jury:

"I instruct you that the witness Miss Maggie Davis is what is known in law as an accomplice, and I further instruct you that you can not convict the defendant upon her testimony alone, unless you first be-

lieve her testimony to be true, and that it connects the defendant with the offense charged, and then you can not convict him upon the testimony of said witness unless you further believe that there is other testimony in the case corroborative of such accomplice's testimony, tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of the offense charged; and in passing upon this issue you may look to all the facts and circumstances in evidence in this case. You are further instructed that the witness Maggie Davis can not corroborate herself."

The criticisms of this charge present no error, and the judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE, not present at consultation.

### ON REHEARING.

#### March 1, 1916.

HARPER, JUDGE.—This case was affirmed at a former day of this term, and appellant has filed a motion for rehearing in which he assigns five grounds in which he thinks the court erred in the original opinion, conceding that the court was perhaps correct in passing on the other propositions presented. Owing to the earnest insistence of appellant's counsel we have again reviewed the five questions presented.

The first contention is that the evidence of the young lady would not make a case of seduction, but shows a case of barter and sale. Her testimony on direct examination is copied in full in the original opinion, and we think it shows a case of seduction and not barter and sale, and would justify a conviction if corroborated.

The next contention is that the court erred in holding that the testimony of the prosecuting witness could be supported by the testimony of her mother and sister If appellant had made no attack on the witness, his contention would be sound, but it has always been the rule in this court that if defendant's case is that the witness testified under corrupt motives, or where it is sought to show that the testimony is of recent fabrication, State may sustain witness by proof of similar statements in harmony with her testimony, made before any motive existed to testify falsely. (English v. State, 34 Texas Crim. Rep., 190; Reddick v. State, 35 Texas Crim. Rep., 463; Mitchell v. State, 36 Texas Crim. Rep., 278; Williams v. State, 24 Texas Crim. App., 637; Jones v. State, 38 Texas Crim. Rep., 87; Ballow v. State, 42 Texas Crim. Rep., 263.) Appellant certainly can not contend that he was not endeavoring to show that the additional testimony she gave on this trial to what she had given on the former trial was not of recent fabrication; and can not contend that he was not insisting that it was conceived by her after a conference with attorneys representing the State. And certainly this was the purpose of appellant introducing, in rebuttal of her testimony on this trial, her testimony given at the

former trial, and that she had made contradictory statements. Certainly under such circumstances the State could support its witness by showing that she had made statements prior to the institution of this prosecution in conformity with her testimony on this trial. It was not permitting a conviction by allowing her to corroborate herself, but such testimony was admissible to aid the jury in determining whether or. not she was speaking the truth on this trial. The court in his charge instructed the jury that "the witness Maggie Davis could not corroborate herself."

The next contention is that we erred in holding that the testimony of Walter Hamilton corroborated the prosecuting witness both as to promise of marriage and sexual intercourse. Appellant concedes that the testimony of this witness does corroborate the prosecutrix as to an act of intercourse, but earnestly insists that it does not corroborate her as to a promise of marriage. We have again read this witness' testimony, and while the witness does not use the words "he told me he promised to marry her," yet no other deduction could be drawn from the testimony of the witness.

He insists we erred in stating that appellant's defense, in addition to a plea of not guilty, was that the girl was not a virtuous and chaste girl, and that he had the additional defense that the transaction was one of barter and sale. This would be included in the statement that she was not virtuous and chaste. But we did not hold that such an issue was not in the case, but if raised it was sufficiently presented in the court's charge, and the jury found against such contention. It was not proper to charge the jury as requested by appellant, that if the prosecutrix relied solely on the promise of marriage in yielding to appellant, he should be acquitted. It is the yielding, relying on the promise, and appellant's conduct that a conviction is authorized.

The fifth contention is that we did not pass on the assignment that the evidence was insufficient to sustain the conviction. We certainly thought that it could be gathered from the opinion that we thought the evidence ample to sustain the verdict. It is true that the baby was born in about eight months from the time the young lady gives as the date of the act of intercourse, but this fact would not render the testimony wholly insufficient. As testified to by the doctor in this case, children who are born in eight months from conception frequently live. The fact that it was born in eight months, its size, condition, etc., is to be considered with all the facts in the case, and we suppose appellant's able counsel presented this circumstance to the jury with the same force and ability that they present it in their brief and in this motion, yet the jury found adversely to their contention, and we can not say they were not authorized under all the evidence to do so.

The motion for rehearing is overruled.

*Overruled.*