## A. D. RHEA v. THE STATE.

### No. 7519.   Decided November 14, 1923.

**1.—Seduction—Prosecutrix—Child of Prosecutrix.**

Where, upon trial of seduction, defendant complained of the fact that when the State introduced prosecutrix as a witness she was permitted to take the stand, and while giving her testimony to hold in her arms a baby which she said was hers and defendant's; that the child fretted and that one of the prosecuting attorneys took it in his arms and carried it in the presence of the jury to another person in the courtroom; there being no profert of the baby in evidence, no comment upon its appearance, and as far as the record revealed no effort made to institute any comparison between it and defendant in any way, there is no reversible error.

**2.—Same—Evidence—Threats—Acts of Defendant.**

If the evidence supported the proposition that any threats were made against defendant by the relatives of the prosecutrix, and that he acted in a given manner because of such threats, still it would have been improper for the court to instruct the jury not to regard his actions as evidence against him in such case.

**3.—Same—Requested Charge.**

Where the state of facts referred to in the requested charge had. no application to the actual facts in evidence, there was no error in refusing same.

**4.—Same—Argument of Counsel—Requested Charge.**

Where the language used by the prosecuting attorney, "Slick town boy," had no particular meaning, and in the absence of a bill of exception in the record complaining of the refusal to give a requested charge withdrawing the argument with reference to the future of the baby of the prosecutrix, there is no reversible error.

**5.—Same—Evidence—General Reputation—False Testimony.**

Where one of the grounds of the motion for a new trial set up the fact that the testimony of certain witnesses, cross-examined by the State, with reference to their knowledge of the general reputation for truth and veracity of one of defendant's witnesses was. untrue and was given under a mistake of facts, and their affidavits attached to the motion, a new trial should have been granted, under the facts in the instant case.

**6.—Same—Evidence—Prosecutrix as a Witness.**

Where the prosecutrix, in a trial for seduction, testified and practically denied carnal relations with any other man than defendant, and asserted that she had but three acts of sexual intercourse with him, giving the dates thereof, and the child which was claimed to be defendant's was born out of the normal period of pregnancy from conception ·to birth, the alleged testimony on reputation of one of defendant's witnesses, who testified to the previous unchaste character of prosecutrix was material and important.

**7.—Same—Evidence—Practice on Appeal.**

Where nothing further appeared in the record to sustain the proposition that the purpose of the State was as contended for, that it did not ask the

question in good faith, this court could not appraise the weight to be given to such objection thereto.

**8.—Same—Practice in Trial Court—Prosecutrix as a Witness.**

Where, upon trial of seduction, it was insisted that because the prosecuting witness came into the courtroom while another witness was testifying and said "it is a lie," etc., that the court should have withdrawn the announcement of ready and have postponed the case, but it was not shown that the jury heard her remarks, there is no reversible error.

**9.—Same—Requested Charge—Charge of Court—Chastity.**

Where the paragraph of the charge of the court objected to was but one of a number of those paragraphs applicable to the issue of chastity of the prosecutrix at the time of the first act of sexual intercourse, and the good faith of her claim of reliance only of the promise to marry, the charge taken as a whole presents no reversible error.

**10.—Same—Evidence—Practice in Trial Court.**

Any question by the State not illegal in form, bringing out fairly and legitimately testimony supporting the proposition that the yielding of prosecutrix was wholly through love and affection for defendant and in reliance upon his promise to marry her, would be admissible. Following Gleason v. State, 79 Texas Crim. Rep., 190.

**11.—Same—Evidence—Credibility of Witness.**

Where witnesses had testified to the bad reputation of a certain witness for defendant, there was no error in asking them whether or not, based upon such reputation, he was entitled to belief on oath.

**12.—Same—Hearsay Evidence.**

Where it would be rank hearsay to permit the defendant's witness to testify that another party told him that the parties heard in the office were himself and prosecutrix, there was no error in rejecting such testimony.

**13.—Same—Bills of Exception—Practice on Appeal.**

This court must decline to consider or discuss bills of exception which are not in the record properly, unless they are shown to be the result of improper action on the part of some officer of the court below.

Appeal from the District Court of Kaufman. Tried below before the Honorable Joel R. Bond.

Appeal from a conviction of seduction; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Cooley & Crisp*, and *Ross Huffmaster*, for appellant. On question of proving threats of personal violence to defendant, Warren v. State, 29 Texas, 370; Sparks v. State, 34 Texas Crim. Rep., 86; Nichols v. State, 32 id., 391; Carlisle v. State. 37 id., 108; Rains v. State, 33 id., 394.

On question of not believing witness under oath, Griffin v. State, 26 Texas Crim. App., 157; Edgar v. State, 129 S. W. Rep., 141; Spence v. State, 1 Texas Crim. App., 541.

*R. G. Storey,* Assistant Attorney General, *H. R. Young,* County Attorney, and *Wynne & Wynne,* Special Prosecutors, for the State. On question of holding baby in prosecutrix's arms, Bodkins v. State, 172 S. W. Rep., 216; Whitehead v. State, 137 id., 368, and cases cited in opinion.

On question of duress, Burton v. State, 101 S. W. Rep., 226; Paris v. State, 131 id., 855.

On question of requested charge, Hunt v. State, 200 S. W. Rep., 1090; Gay v. State, 235 id., 211; Rodriguez v. State, 236 id., 726.

On motion for new trial, Henderson v. State, 229 S. W. Rep., 535; Green v. State, 233 id., 962.

On question of newly discovered evidence of mistake, Andres v. State, 229 S. W. Rep., 533.

On question of acts of prosecutrix during trial, Buchanan v. State, 52 S. W. Rep., 769; Watson v. State, 205 id., 663.

On question of yielding to sexual intercourse, Browning v. State, 142 S. W. Rep., 2; Black v. State, 160 id., 720; Carter v. State, 127 id., 217.

On question of witness's reputation, Forrester v. State, 42 S. W. Rep., 400; Lassater v. State, 227 id., 949; Pruitt v. State, 225 id., 525.

LATTIMORE, JUDGE.—From a conviction for seduction in the District Court of Kaufman County with a penalty of five years, appellant appeals.

Appellant was a barber living in the town of Kaufman. Prosecutrix was at work in a telephone office in said town and the two met and began to keep company. Without going into details prosecutrix testified that after going with appellant some time he proposed marriage to her and they became engaged in January 1921, the wedding to take place in April, and that on the 20th of March, relying upon appellant's promise to marry her and his insistence upon his intention so to do and his affection for her, she yielded her person to him. She also testified to subsequent acts from one of which she became pregnant and was delivered of a child. A sister and brother of prosecutrix testified for the State to conversations had with appellant which if true sufficiently corroborated her in her claim that there was an engagement to marry. Appellant denied any promise to marry but admitted his intercourse with prosecutrix upon a number of occasions. He also sought to show by witnesses acts of intercourse with other parties prior to the time of the act relied upon by the State.

There are a number of bills of exception in the record which are not brought forward or discussed in the able brief filed by appellant's counsel. We have carefully examined each of those not so discussed and find nothing in them calling for a reversal, and our discussion here

will be of those points presented in the brief. Appellant's first complaint is of the fact that when the State introduced prosecutrix as a witness she was permitted to take the stand and while giving her testimony to hold in her arms a baby which she said was hers and appellant's. There is a bill also complaining of the fact that the child fretted and that one of the prosecuting attorneys took it in his arms and carried it in the presence of the jury to another peron in the courtroom. This court held in Snodgrass v. State, 36 Texas Crim. Rep., 211, and in Whitehead v. State, 61 Texas Crim. Rep., 558, that the State might prove by prosecutrix that the accused was the father of the child which she had in her arms in the presence of the jury. We are cited to no authority holding to the contrary. We have examined the cases of Stracner v. State, 86 Texas Crim. Rep., 89, 215 S. W. Rep., 305; Gleason v. State, 77 Texas Crim. Rep., 300, 178 S. W. Rep. 506; Gray v. State, 43 Texas Crim. Rep., 300, and Adams v. State, 87 Texas Crim Rep., 67, 219 S. W. Rep., 460, cited by appellant in support of his contention. In the opinion in the Stracner case, supra, Judge Davidson distinctly says that facts corresponding to those in the instant case do not constitute ground for reversal. In the Gleason case, supra, the child was introduced in evidence and this was held reversible error. Gray v. State, supra, was a rape case and has no pertinence so far as we can see. In Adams v. State, supra, the opinion of the court reversed the case upon various points, one of which was because of argument of the State's attorney upon the resemblance of the child, which was held in the lap of prosecutrix, and the appellant. We do not think it authority for the contention here made by appellant. In the instant case it is made to appear that the young woman brought her baby into the courtroom when the witnesses were called to be sworn and that she carried it into the witness chair with here where it remained quiet for a while and then began to fret and that one of State's counsel removed it and carried it to some other person. There was no profert of the baby in evidence, no comment upon its appearance, and as far as the record reveals no effort made to institute any comparison between it and appellant in any way.

Appellant asked a special charge in substance that the jury should not consider a statement claimed by the State to have been made by him to the sister and brother of prosecutrix to the effect that he would come out and marry her, if they believed that said statement was induced by reason of threats made by said parties to him; and further that if they believed appellant went away from the city of Kaufman for about three weeks and that his absence also was brought about by reason of threats, that the jury should not consider any of said evidence against him. If the evidence supported the proposition that any threats were made against appellant by the relatives of the prosecutrix and that he acted in a given manner

because of such threats, we would still think it improper for the court to instruct the jury not to regard his actions as evidence against him in such case. It might become a question for the jury to decide the extent to which the actions referred to were criminating in their character, and the weight to be attached to such actions if brought about by threats, but we know of no rule requiring the jury to be told that such evidence could not be considered at all. However neither the brother of prosecutrix when testifying for the State, nor the appellant when testifying for himself, attributed any threats to said brother. The sister of prosecutrix testified that when she learned of her sister's condition she went to Kaufman and had a talk with appellant. According to her testimony she said to him: "You were engaged to my sister before you ever touched her" and he replied Yes, and that he was going out the next day to marry her and would be there in the evening. Witness said she then told him he had better come there before evening, and that he replied he would come the next morning and go to Dallas and marry her. On cross-examination witness said that after appellant had promised to come out and marry her sister that she then said to him: "If you don't come, papa will be up here on to you, my papa will kill you." She was very positive that no threat was made before he made the admission that he was engaged to marry her sister and until after he had promised to come out and marry her. Referring to this occasion appellant when on the witness stand said they wanted him to marry prosecutrix that evening; that he did not tell her sister that he had promised to marry prosecutrix; that he did not tell said sister that he would be out there and get prosecutrix and take her to Dallas and marry her. Appellant said that he did not go out there the next day but that he left Kaufman that evening and went to Fort Worth and stayed over there two or three weeks, and that the reason he left town was because he did not want any trouble with the father of prosecutrix; that he thought it would give him a few days to get over his mad spell and study it over. In view of this testimony we do not think any error was committed in the refusal of the special charge. The principle of law applicable to a state of facts referred to in the charge, has no application to the actual facts in testimony from the witnesses herein.

There is complaint in two bills of exception of the action of private prosecuting counsel in argument in referring to appellant as a "slick town boy." The authorities cited, to-wit: Cannon v. State, 84 Texas Crim. Rep., 479, 208 S. W. Rep., 660, and Jupe v. State, 85 Texas Crim. Rep., 573, 217 S. W. Rep., 1041, seem to us to have no bearing. In the Cannon case no complaint was made of any particular reference to the appellant but inflammatory appeals were

indulged. In Jupe's case, *supra,* the State's attorney called the appellant a cowardly cur and the use of such language was condemned. There is no question but that appellant was a town boy, and the fact that in the opinion of the attorney he was a "slick town boy" might be argued as supported by facts. The language used has no particular meaning and we would not deem it reversible error. We find no bill of exceptions in the record complaining of the refusal to give a charge to the jury not to consider the argument with reference to the future of the baby of the prosecutrix.

It is made to appear that two witnesses for appellant were cross-examined by the State and asked with reference to their knowledge of the general reputation for truth and veracity of another of appellant's witnesses, Arthur Alexander, and that they said they knew same and that his reputation for truth and veracity was bad. As one of the grounds of his motion for new trial appellant sets up the fact that the testimony of said witnesses on that point was untrue and was given under a mistake of fact and the affidavits of the two witnesses in question are appended to the motion for new trial.

An examination of the authorities cited by appellant as well as others indicates that this court has almost uniformly held that when witnesses who testified to material facts upon the trial come forward and make affidavits in support of the motion for new trial, stating that their testimony as formerly given was incorrect and was based upon a mistake of fact, new trials should have been granted. Practically the entire defensive theory of this case was that the prosecutrix was of previous unchaste character and that she did not yield herself to appellant in reliance upon any promise to marry. As supporting this appellant offered as a witness one James who testified that he had had carnal knowledge of prosecutrix before she began going with appellant. The State introduced a number of witnesses who testified that James' reputation for truth and veracity was bad. When prosecutrix was giving her testimony she stated that she became engaged to appellant in January and went to Dallas during the February following and worked in a hosiery factory, and further stated that twice during the month of February appellant came to Dallas to see her; but she denied having gone with him on either of these occasions to a rooming house, and also that she ever went to any rooming house in Dallas with any man. Appellant offered Arthur Alexander who testified that he spent two weeks in February of that year at Wallace Hill's rooming house in Dallas and that while there on one occasion he saw prosecutrix come to the rooming house with appellant, and on another occasion saw her come there with another man. The State proved by the two witnesses that Arthur Alexander's reputation for truth and veracity was bad.

As part of his motion for new trial appellant asserted that the two witnesses who testified that the reputation of Alexander for truth and veracity was bad had done so under a mistake of fact, and that in truth and in fact they did not know Arthur Alexander and did not know his reputation but had confused him and his reputation with the identity and reputation of Alexander's brother. The affidavits of each of said witnesses sustaining this contention of appellant were appended to and made a part of the motion for new trial, as we have above stated. We are inclined to think that under the authorities the action of the learned trial judge in refusing the motion for new trial upon this ground was erroneous. Banks v. State, 92 Texas Crim. Rep., 523, 244 S. W. Rep., 1015; Barber v. State, 87 Texas Crim. Rep., 535, 223 S. W. Rep. 457; Estrada v. State, 15 S. W. Rep., 644; Brown v. State, 58 S. W. Rep., 131; Carter v. State, 75 Texas Crim. Rep., 110, 170 S. W. Rep., 739. In this connection we feel· impelled to call attention to the testimony of the prosecutrix herself. She emphatically denied carnal relations with any other man than appellant and asserted that she had but three acts of intercourse with him, the dates of each of which she gave, one being March 20th, 1921, another April 3rd following, and another April 17th. She further testified that her baby was born on February 2, 1922, and that appellant was its father. Slight calculation reveals that nine months anterior to February 2, 1922, would date back to May 2, 1921, and would lead to the observation that if nine months be the normal period of pregnancy from conception to birth of the child, that such conception in this case would likely have occurred about May 2, 1921. We further observe in the testimony of prosecutrix a statement by her that she missed her period on April 14, 1921, following an act of intercourse with appellant on April 3rd. If the act of intercourse preceding the stoppage of menstruation on the part of prosecutrix caused conception, we would thus have apparently a period extending from April 3, 1921, to February 2, 1922, or nearly ten months. Attention is called to this because of the fact that the young woman may have been mistaken in some of her testimony, but if adhered to by her it would seem to indicate that her baby born February 2nd, could hardly be the result of the intercourse with this appellant on April 3rd, or April 17, 1921.

Complaint is also made of the fact that the State was permitted to ask the witness, Arthur Alexander, on cross-examination with reference to his going to Dr. Shaw and getting some dope to bolster him up while he testified and as to whether he was a dope fiend and had been using dope the day he gave testimony. An examination of the bill of exceptions wholly fails to reveal any misconduct on the part of the State in this regard. It is true that the bill shows the State asked the question and that appellant objected for the stated

96 T. C.—2

reason that there was no ground for such question, and that same was asked for the sole purpose of discrediting witness before the jury and to thus destroy the force and effect of his testimony. The objection was sustained but nothing further appears in the record to sustain the proposition that the purpose of the State was as contended, or to show that they did not ask the questions in good faith. Unless there be some such showing this court could not appraise the weight to be given to such objection. Numerous authorities could be cited holding that the mere statement of a ground of objection is not sufficient to establish same as a fact.

It is also insisted that because the prosecuting witness came into the courtroom while another witness was testifying and said: "It is a lie. It is not so, she knows it is not so," that the learned trial judge should have granted appellant the privilege of withdrawing his announcement of ready and have postponed the case. This was made a ground of the motion for new trial and its manner and effect was controverted by the State. The affidavits of a number of jurors appear in which they uniformly state that the prosecuting witness if she made the statement was so far from them that they did not hear what she said and that there was no discussion of same by them at any time. We are not impressed by the fact that there was any error in the action of the lower court in refusing to postpone the case on account of this occurrence.

We find an exception to that part of the charge of the trial court which reads as follows:

"If you believe that the first act of intercourse between the defendant and Edna Cobb was induced or brought about by any means other than by a promise of marriage made by defendant to her, upon which she relied, or if you have a reasonable doubt thereof, you must acquit the defendant, or if you have a reasonable doubt as to whether defendant had promised to marry her, you must acquit the defendant, or if you have a reasonable doubt as to whether Edna Cobb was under twenty-five years of age at the time of the first act of intercourse between defendant and the said Edna Cobb, you will acquit the defendant."

This paragraph of the charge so excepted to is but one of a number of those paragraphs applicable to the issue of chastity of the prosecutrix at the time of the first act of intercourse and the good faith of her claim of reliance only on the promise to marry. We do not believe the charge taken as a whole calculated to cause any confusion in the minds of the jury, or that the charge complained of presents any erroneous proposition.

By bill of exceptions appellant presents complaint of the action of the State in asking prosecutrix. "At the time you had intercourse the first time, tell the jury whether or not you were in love with him,"

to which the witness answered, "I was in love with him with the intention of being his wife, that is what I thought." We do not consider the question objectionable. Gleason v. State, 79 Texas Crim. Rep., 190. Any question not illegal in form bringing out fairly and legitimately testimony supporting the proposition that the yielding of prosecutrix was wholly through love and affection for appellant and in reliance upon his promise to marry, would be admissible.

Complaint is made by several bills of exception that witnesses who had testified to the bad reputation of appellant's witness Palmer were asked whether or not based on such reputation Palmer was entitled to belief on oath at the hands of the jury. Mr. Branch cites a number of authorities in his Annotated P. C., p. 116, sustaining the proposition that after a witness testifies that the general reputation of another witness is bad for truth, he may be asked if that general reputation is such as to entitle him to belief on oath.

Appellant sought to prove by his witness Norwood that he worked at the express office at the same time that witness Palmer worked there, he working in the day time and Palmer at night, and that each had a key to the office, and that Miss Cobb, prosecutrix, worked in a nearby office and that he frequently heard parties talking in the express office at night when the door was locked and that later the floor of the office was torn up and rubbers used in acts of intercourse were found and that Palmer told him that he and prosecutrix were the parties in the office so heard by witness. That the trial court was correct in the rejection of the testimony is plain. It would be rank hearsay to permit the witness to testify that Palmer told him that the parties heard in the office were himself and prosecutrix. It does not even appear from the bill of exceptions that the witness offered to testify that he at any time heard a woman's voice in the express office at night. This court must decline to consider or discuss bills of exception which are not in the record properly, unless their failure to so appear is shown to be the result of improper action on the part of some officer of the court below. The purported bill of exceptions made a part of appellant's brief herein cannot be considered as it comes within the character just described.

We have thus carefully examined and discussed the various contentions raised by appellant in view of the reversal of this case and in order that the matters here presented may not arise in case of another trial.

For the errors above mentioned the judgment will be reversed and the cause remanded.

*Reversed and remanded.*