## CANTU v. STATE.

### No. 11784.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 7, 1948.

Kelley, Looney, McLean & Enochs, of Edinburg, for appellants.

F. T. Graham, Co. Atty., and Clarence S. Bennett, both of Brownsville, for appellee.

MURRAY, Justice.

This is a proceeding instituted by the State of Texas under and by virtue of the provisions of Art. 2338—1, Vernon's Ann. Civ.Stats., relating to "Delinquent Children" and "Juvenile Courts" for the purpose of having Jose Cantu, Jr., a minor, 16 years of age, declared to be a "Delinquent Child."

The proceeding was a non-jury trial before the District Judge of the 103d Judicial District, sitting as a Juvenile Court, and resulted in Jose Cantu, Jr., being declared a juvenile delinquent, and further ordering that he be committed to the State Training School for Boys at Gatesville, Coryell County, Texas, for an indeterminate peri-

od of time, not extending beyond the time the said minor shall reach the age of twenty-one years.

From that judgment Jose Cantu, Jr., and his parents, Jose Cantu, Sr., and Mrs. Jose Cantu, Sr., have prosecuted this appeal.

The State of Texas, acting through the County Attorney of Cameron County, Texas, filed a petition in which the acts of Jose Cantu, Jr., which were alleged to render him a delinquent child are stated as follows:

"That heretofore, on or about June 22, 1947, the said Jose Cantu, Jr., committed the offense of seduction, in that on said date he took Esperanza Castillo, age sixteen, to a hotel on Padre Island and there promised to marry her, and on his promise to marry her, had sexual relations with the said Esperanza Castillo. That the said Jose Cantu, Jr., and Esperanza Castillo spent the night of June 22, 1947, in said hotel on Padre Island, Cameron County, Texas. That on returning from Padre Island, the said Jose Cantu, Jr., threatened the said Esperanza Castillo with serious body injury if she would not sign a statement to the effect that she was committing suicide, and that she had done this voluntarily. That the said Jose Cantu, Jr., went so far as to try to push the said Esperanza out of the car while said car was being driven at a rapid rate of speed.

"That in connection with going to Padre Island, the said Jose Cantu, Jr., did not have permission of his father to take said car over night; that he had promised his father that he would return that very day."

We have not been favored by a brief upon behalf of the State of Texas, and it seems that the law does not make it the duty of any one to file such a brief.

◼ The only act charged in this petition which would show Jose Cantu, Jr., to be a deliquent child is the alleged act of seduction of Esperanza Castillo. The allegations with reference to his trying to get Esperanza Castillo to sign a suicide note and his failure to have permission from his father to use his automobile are too vague and indefinite to charge any violation of any penal statute or to constitute Jose Cantu, Jr., a delinquent child. Robinson v. State, Tex.Civ.App., 204 S.W.2d 981.

Appellants' first point presents the contention that the evidence is insufficient to show that appellant is guilty of the offense of seduction in that it fails to show that the alleged act of intercourse was brought about by a promise of marriage.

The testimony given by the prosecutrix Esperanza Castillo, which is practically all the evidence on the matter, is in substance as follows:

She was an unmarried girl of sixteen years. She resided at La Feria and worked as a waitress in a cafe there. She was introduced to Jose Cantu, Jr., by another boy with whom she had gone to school. This introduction took place at the cafe where she worked. Thereafter, Jose Cantu, Jr., came by to see her almost every day. On one of these visits she let him have one of her photographs. After she had thus known him for about six weeks, she asked him to be her partner at a wedding in which she was to be the maid of honor. The wedding was to take place at 10 a. m. on June 22, 1947, and on the appointed day Jose Cantu, Jr., picked her up in an automobile along with another boy and girl. After the wedding they took the other couple home and then he asked her to go to a restaurant with him for lunch. She told him she would first have to go home and change from a long dress to a short dress. After this was accomplished she went with him to a cafe where they had lunch. After lunch they again began to ride around. Ultimately she noticed that he had taken a road that lead to San Benito. She then asked him to take her home but he paid no attention to her. Near Port Isabel he asked her to marry him and promised to marry her, so she went on with him. She does not testify that she was in love with him or that he had told her that he was in love with her, or that he had otherwise manifested any love for her. They took a room at Padre Island that night and left about 9 o'clock the next morning. They slept together that night and had sexual intercourse. About midnight she went in

the gulf and washed her clothes. Her panties were bloody and she wanted to clean them. On the way back to La Feria he was still promising to marry her. After they arrived at La Feria they learned that his mother was very angry and was calling her bad names and was threatening to make trouble. They then drove over the road to Santa Rosa and stopped at a little grocery store and he bought some paper and pencils and shaving blades and wanted her to write a note that she had killed herself, which she refused to do. He then pulled her hair and slapped her. He then took her back to La Feria and put her out of the automobile and he went on home with his mother.

We sustain appellants' contention that this evidence was insufficient to establish the fact that she agreed to the act of sexual intercourse by reason of the promise of marriage. It is true that she does say that he promised to marry her while they were near Port Isabel and after that she went on with him, but it is not shown that the promise of marriage was ever mentioned in connection with her agreeing to have sexual intercourse, nor did she ever state that it was by means of the promise of marriage that she was persuaded to agree to the intercourse, nor does she state she would not have had intercourse with him but for the promise of marriage. To constitute the offense of seduction the prosecutrix must have been induced to submit to the act of intercourse as a result of a promise of marriage. The promise of marriage must have been the inducing cause. Barnes v. State, 37 Tex. Cr.R. 320, 39 S.W. 684; Collins v. State, 114 Tex.Cr.R. 660, 26 S.W.2d 242; Putnam v. State, 29 Tex.App. 454, 16 S.W. 97, 25 Am.St.Rep. 738; Nolen v. State, 48 Tex.Cr.R. 436, 88 S.W. 242; Gleason v. State, 77 Tex.Cr.R. 300, 178 S.W. 506.

As a matter of fact, she does not even state that she consented to the act of intercourse at all and, as far as this record is concerned, the act of intercourse may have been by force and without her consent. If she did not consent the act might constitute rape, but could never constitute

seduction. Collins v. State, 114 Tex.Cr.R. 660, 26 S.W.2d 242.

It is true that in a proceeding of this kind the State should not be held to the same strict technical proof that is required for a conviction of a felony in a criminal case, but certainly it must be shown that the crime charged has been committed in all of its elements. The yielding of the female by means of an unconditional promise of marriage upon which she relies, is the very gist of the offense of seduction, and unless this fact is established by the evidence there is no seduction. Collins v. State, 114 Tex.Cr.R. 660, 26 S.W.2d 242.

Prosecutrix has not testified that she was in love with appellant nor that he had professed love for her. If the evidence did show that she yielded her virtue by reason of a promise of marriage it would smack of barter and trade and is not the kind of a betrayal of a female which is condemned by our statutes. In Gleason v. State, 77 Tex.Cr.R. 300, 178 S.W. 506, the court said: "The evidence in this case being wholly insufficient to sustain the conviction, as the young lady's testimony, if true, as a whole does not make a case of seduction, in that it does not show any of those acts, wiles and blandishments so necessary to win the heart of a woman, and cause her to surrender her virtue to him, but simply shows a plain promise to marry in exchange for sexual favors, it will be necessary to reverse the case."

There are a number of ways in which a child may be shown to be a delinquent child, but the petition must set forth the ground relied upon by the State and the proof must conform to the allegation. Robinson v. State, Tex.Civ.App., 204 S.W. 2d 981.

Here the State charged that appellant was a delinquent child in that he had committed the offense of seduction. It did not allege that he had committed rape, which it might have done in an alternate count. The State has failed to prove the allegation made.

Appellant next contends that he could not be found to be a delinquent child

904

because the testimony of the prosecutrix was not corroborated. We overrule this contention. This proceeding is a civil suit and is governed by the rules of evidence governing such matters and not by the rules of evidence governing criminal causes. Robinson v. State, Tex.Civ.App., 204 S.W. 2d 981.

Appellants' fourth, fifth and sixth points are without merit and are overruled.

■ Appellants' seventh point complains that the trial court abused his discretion in ordering Jose Cantu, Jr., committed to the State Training School for Boys at Gatesville, Coryell County, Texas, for an indeterminate period of time not extending beyond the time he shall reach the age of twenty-one years, instead of committing appellant to the custody of his parents. There is no evidence in the record indicating that the parents of Jose Cantu, Jr., are not proper persons to have the care, custody and control of their minor son, Jose Cantu, Jr. We sustain this contention. In passing the Juvenile Delinquency Act, Art. 2338—1, Vernon's Ann.Civ.Stats., the Legislature expressed a preference that a child adjudged to be a delinquent child be placed in the care, custody and control of its parents. The act provides:

"Section 1. The purpose of this Act is to secure for each child under its jurisdiction such care, guidance and control, *preferably in his own home,* as will serve the child's welfare and the best interest of the state; and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given him by his parents. (Emphasis ours.)

"The principle is hereby recognized that children under the jurisdiction of the court are wards of the state, subject to the discipline and entitled to the protection of the state, which may intervene to safeguard them from neglect or injury and to enforce the legal obligations due to them and from them." See also Ballard v. State, Tex.Civ.App., 192 S.W.2d 329.

It is error for a trial court to commit a delinquent child to others than the child's parents in the absence of evidence that such parents are not proper persons to have the care, guidance and custody of such minor, or that it is for the best interest of such minor and the State that he be committed to the custody of others than his own parents.

The judgment of the trial court is reversed and the cause remanded.