## WILL BARBER v. THE STATE.

### No. 5634. Decided June 25, 1920.

**1.—Murder—Newly Discovered Evidence—Proper Diligence—Witness—Convict.**

Where it was not known to the defense at the time of the trial that the chief State's witness was a convict. and said witness declared on the stand that he was never convicted in his life, and it became known thereafter that he was a convicted felon and that his testimony on the trial was most material, and that he had perjured himself by stating that he was not a convict, a new trial should have been granted.

**2.—Same—Provoking Difficulty—Manslaughter.**

Where upon trial of murder, the issue of manslaughter as incident to the law of provoking the difficulty was raised, a charge should have been given on the law of manslaughter.

Appeal from the Criminal District Court of Harris. Tried below before the Honorable C. W. Robinson.

Appeal from a conviction of murder; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*Alvin M. Owsley*, Assistant Attorney General. for the State.

MORROW, JUDGE.—The appellant is under a sentence of confinement in the penitentiary for twenty-five years for the offense of murder. The State's theory and testimony is that the appellant maintained illicit relations with the wife of deceased before her marriage, and continued them during the absence of the deceased in the army; that upon the return of the deceased appellant went to his home and insisted upon continuing these relations. Testimony was given that upon this occasion a controversy of some warmth took place, in which appellant, the deceased and his wife, and some relatives took part. The deceased and appellant left the house, went out on the street, and shortly thereafter the appellant fired two shots, killing deceased. Appellant testified, denying that his object in going to the premises was that claimed by the State, and denying the acts and conduct attributed to him by the State's witnesses, claiming that he visited the house to obtain some clothes that he had left there; that when he left deceased followed him, stating that he had heard that appellant had been living with his wife during his absence, and that he didn't want him to fool with her any more, and if he did, they would have trouble, to which appellant replied there would be no trouble, stating: "She married on me, and I would not be surprised if she doesn't hustle on you." The deceased, according to ap-

pellant, was enraged by this remark, and advanced with an open knife, saying: "You son-of-a-bitch, you shan't say that," upon which appellant drew his pistol and fired.

One of the State witnesses, William Nathan, testified to various facts supporting the State's theory, and controverting that of the appellant. From his testimony it appeared that while at the home of deceased, appellant did insist upon sleeping with the wife of the deceased; that he caused her to pull off her clothes and lie down on the bed with him; that when deceased insisted upon his leaving, stating that he wanted to go to bed, the appellant replied: "If you go to bed, we will all sleep in Hell." He also testified that he saw the appellant and the deceased upon the street after they left the house; that when he walked up the appellant drove him off, and told him: "Go on, this is none of your business;" that he stepped across the street, and soon after heard the shots; that immediately after the shooting he went to the deceased and assisted in carrying him to the house, and that he found no knife. He also testified that he heard the parties talking, but could not tell what they said. Appellant claimed that he did not drive the witness away, but that deceased told him to go ahead. This the witness disputed.

The appellant sought a new trial upon the ground that he had discovered since the trial that the witness Nathan was a convicted felon, and the refusal of the court to award the new trial is before us for review. It was clearly made to appear upon the hearing in connection with the motion for a new trial that the witness William Nathan had been convicted of burglary, but at the time was going under the name of M. J. Jones, and his conviction was under that name. It was further shown by the testimony of one of the police officers of the city of Houston that since the trial the witness had admitted his identity with the Jones named in the judgment of conviction. It was shown that appellant had no acquaintance with the witness, and no knowledge that he had gone by the name of Jones, or been convicted under that name, and that his attorney had no such knowledge, but that on the eve of the trial they received some information to the effect that the witness was a convict, and immediately instituted an investigation to determine the truth of this information, and in pursuit of this inquiry the attorney for the appellant sought during the trial to interview the witness, that he caused the police authorities and detectives to make inquiry, and endeavored to ascertain the truth about the matter, and caused an investigation of the criminal records available and a comparison with the witness, but was unable to obtain evidence to verify the rumor that he had been convicted. When the witness was put upon the stand, he, responding to the examination by the State's attorney, declared that he had never been convicted in his life. We do not think the diligence was insufficient (Carden v. State, 62 Texas Crim. Rep., 545); nor can it be said that the testimony of the witness was not upon material facts.

In effect and detail, it is contradictory to appellant's theory and testimony. It is opposed to the theory of innocence. It puts the appellant in the position of going to the home of deceased and brazenly demanding that he be permitted to sleep with the wife of deceased. It puts into his mouth the words: "If you go to bed, we will all sleep in Hell," words which the appellant claims that he did not use, and which, if used, amounted under the circumstances to a threat, and tended to show that the appellant was acting in disregard of social duty, and was bent on mischief. Under the statute making newly discovered evidence one of the grounds for a new trial, the court has on numerous occasions ordered reversals where it·was conclusively shown by the newly discovered evidence, or the admission of the state's witness, that material testimony given by him upon the trial was through mistake of fact. Estrada v. State, 29 Texas Crim. App., 170; Heskew v. State, 14 Texas Crim. App., 608; Brown v. State, 42 Texas Crim. Rep., 176; Branch's Annotated Texas Penal Code, sec. 205. In the case before us the witness was incompetent to testify—made so by statute. C. C. P., Art. 788. His testimony, if the truth had been known, could not have been used. Long v. State, 10 Texas Crim. App., 198. If he had not falsely sworn that he had not previously been convicted, the judgment of conviction would have barred his testimony. We have held, as above stated, that where it is made plain upon motion ·for a new trial that a witness has falsely stated facts material against the accused through mistake, that relief may be had by the production of newly discovered evidence to this effect. In the instant case, the testimony could not have been given at all except for the perjury of the witness as to his qualification. The testimony he gave was damaging. The extent to which it contributed to the infliction of the heavy penalty assessed against the appellant cannot be determined, but the wrong done him can be corrected, and we think ought to be corrected by reversing the judgment because a new trial was not accorded him.

The court submitted the issues of murder and perfect self-defense, and an exception to the charge was reserved for the failure to submit the law of manslaughter. A correct submission of the case, we think, would have required a charge qualifying the right of self-defense by an instruction on the law of provoking the difficulty, accompanied by an instruction advising the jury under what circumstances they might be authorized to reduce the grade of the homicide to that of manslaughter, if the deceased was provoked to attack the appellant by the language used by the appellant with reference to the wife of deceased. The appellant having failed, in the manner provided by law, to direct the attention of the trial judge to the fact that the law of manslaughter, so far as it pertained to the case, was that incident to the law of provoking the difficulty, and he having, without objection, availed himself of the benefit of a charge submitting the unqualified right of perfect self-defense, his privi-

lege after verdict of successfully attacking the court's charge is doubtful. The judgment, however, should be reversed upon the grounds stated with reference to the motion for a new trial, and upon another trial, upon similar facts, the law of provoking the difficulty should be given.

For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*