## Arthur Hays v. The State.

No. 9808.   Delivered March 3, 1926.

**1.—Murder—New Trial—Newly Discovered Evidence—Erroneously Refused.**

Where, on a trial for murder, the State, relying in the main upon the evidence of a witness named Ralph Hardin, whose testimony as given upon the examining trial was reproduced on the present trial, appellant filed his motion for a new trial, setting up the fact that the witness Hardin was in truth Roy Loyless, a convicted felon, and not a competent witness at the time his testimony was given on the examining trial, and on the present trial, and on a hearing of his motion this fact was established by evidence, conclusively, the motion for a new trial should have been granted.

**2.—Same—Continued.**

Where the failure to discover that a witness who has testified on the trial was incompetent by reason of his being an ex-convict is not due to lack of diligence on the part of appellant, and if it further appears that the case is one that the conviction rests almost, if not entirely, on the testimony of such incompetent witness, to permit such conviction to stand would be manifestly unjust.  See Love v. State, 272 S. W. 778; Barber v. State, 87 Tex. Crim. Rep. 585.

Appeal from the District Court of El Paso County.   Tried below before the Hon. W. D. Howe, Judge.

Appeal from a conviction of murder, penalty seven years in the penitentiary.

The opinion states the case.

*W. H. Fryer* and *Harper & Howard* of El Paso, for appellant.

*Sam D. Stinson,* State's Attorney, and *Nat Gentry Jr.,* Assistant State's Attorney, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of El Paso County of murder, and given seven years in the penitentiary.

Ralph Hardin was an eye-witness to this homicide, and on the examining trial of appellant gave damaging testimony against him.  Same was reduced to writing.  The homicide was in 1923, and this trial in 1925.  Soon after the homicide Hardin disappeared and does not seem to have been located until two days before this trial.  The case had been set in January, 1925, but was passed because of the illness of wit-

nesses, and then continued by the State partly because they had not been able to determine the whereabouts of Hardin. The trial begun May 18, 1925. It was shown during the trial that on Saturday, May 16, Richard Roddy, son of deceased, went to Douglas, Arizona, and got an affidavit from Hardin in which he stated that he had permanently removed from Texas, had taken up his residence in Arizona and did not expect to return to Texas. The record does not disclose how Roddy found out that Hardin was in Douglas, Arizona, or that any one else connected with the case knew or had known where he was after he left Texas in 1923. The court admitted in evidence Hardin's statement made on the examining trial. No other eye-witness testified for the State.

After conviction appellant's brother went to Douglas, Arizona, and saw Hardin, who gave him an affidavit stating that he had been committed to an insane asylum in Missouri from which he had escaped. Also that on the day of this homicide he and deceased had been drinking together and were under the influence of liquor when the shooting occurred. Also that he had read the statement made by him at the examining trial referred to, and that he had no recollection of having said such things, or that the shooting occurred as therein stated. He further said in said affidavit that he did not know who fired the first shot, or who brought about the shooting. He further said that he told Roddy on May 16th, at the time he gave Roddy the affidavit referred to, that he would ruin the State's case if used as a witness on the trial. He further said that he had never heard from any of the brothers or relatives of appellant, and so far as he knew they did not know where he was living. This affidavit was dated May 31, 1925, and was appended to appellant's amended motion for new trial. This motion was contraverted by the State and many affidavits offered showing the sanity of Hardin, and that deceased and Hardin were not drinking at the time of the homicide. Appellant later filed a second amended motion for new trial, setting up that on June 14, 1925, he for the first time learned that Hardin's true name was Roy Loyless, and that he was an unpardoned convict in the State of Texas, having been sent to the penitentiary from Galveston County for felony theft, and having escaped before he had served out his time. On the hearing of the motion for new trial the State admitted that Hardin's true name was Loyless, and that he was an escaped and unpardoned convict, but took issue with appellant on the ground of his diligence in discovering such facts. There is an extended statement of the facts heard by

the court upon the presentation of this motion, and it appears that he concluded that appellant did not show diligence. We are not in accord with the conclusion reached by the learned trial judge in this regard, and would further observe that in a case where it clearly appears the conviction rests almost, if not entirely, on the statement of one who was prohibited by statute from giving testimony—to permit such conviction to stand would be manifestly unjust. Love v. State, 272 S. W. Rep. 778; Barber v. State, 87 Texas Crim. Rep. 585. There is nothing in this record to suggest that appellant or his counsel at any time knew or suspected the identity of Hardin and Roy Loyless. The record is entirely free from anything which would lead us to conclude that from the time Hardin left Pecos in the spring of 1923, appellant or his counsel knew or were able to find anything of the whereabouts of Hardin until it was disclosed on appellant's trial by the testimony of Richard Roddy that Hardin was living in Douglas, Arizona. Believing from the record that appellant used all reasonable diligence to put him in possession of facts which would justify the rejection of the testimony of Hardin, and that it was disclosed without contradiction, upon the hearing of the motion for new trial, that Hardin was an unpardoned convict, and the only eye-witness who gave testimony against appellant, we think the motion for new trial should have been granted.

For the error above mentioned the judgment is reversed and the cause remanded.

*Reversed and remanded.*